**Ronald LANDON, Plaintiff,**

v.

**LIEF HOEGH AND CO., INC., Defendant.**

**A/S ARCADIA, Defendant and "Plaintiff Seeking Joinder,"**

v.

**GULF INSURANCE COMPANY, Plaintiff or Defendant or Involuntary Plaintiff.**

No. 73 C 1232.

United States District Court, E. D. New York.

Oct. 10, 1974.

Joseph T. Stearns, New York City (Haight, Gardner, Poor & Havens and J. Ward O'Neill, New York City, of counsel), for the shipowner.

Philip Di Costanzo, Brooklyn (Di Costanzo, Klonsky & Cutrona, Brooklyn, of counsel), for the stevedore's carrier.

Floyd F. Klapper, New York City (Schneider, Kleinick, Weitz & Klapper, New York City, of counsel), for plaintiff.

## MEMORANDUM and ORDER

DOOLING, District Judge.

In this action, commenced on August 16, 1973 plaintiff longshoreman, an employee of Pittston Stevedoring Corp., while aboard the vessel Hoegh Opel on February 7, 1973, through the alleged negligence of the defendant bareboat charterer in allowing snow and ice to accumulate on the top deck, sustained personal injuries when he slipped and fell; he seeks to recover damages against the defendant shipowner. Defendant denies that it was negligent and alleges that plaintiff's own negligence caused or contributed to his injury. Plaintiff's answer to defendants' interrogatory asserted unseaworthiness in the accumulation of ice and snow on the offshore side of the No. 4 hatch, top deck, where the accident allegedly occurred.

Defendant sought and obtained leave to join Gulf Insurance Company as a necessary party and also to join Pittston as a third party defendant against whom it could claim a pro rata reduction of any liability to plaintiff. Gulf was Pittston's Longshoremen's and Harbor Workers' Compensation Act carrier and it had allegedly made $736 of disability payments to plaintiff and paid medical expenses of $377, pursuant to the Act, by reason of the injury sued upon, and it had by notice claimed a lien—an "indemnity lien"—in that amount. The theory of the motion, as to Gulf, was that the "indemnity lien" of Gulf under 33 U.S.C. § 933(b), (h), (which subrogates the carrier (Gulf) to the employer's (Pittston's) rights under 33 U.S.C. § 933(b), (d), (e), (f) and (g), which define the employer's and hence the carrier's right to be made whole out of a longshoreman's third party cause of action for medical benefit paid for and compensation payments made to the longshoreman) is in law a statutory claim directly against the third-party wrongdoer (defendant) and is not simply a "lien." A claimed consequence is that the stevedore's (Pittston's) contributing negligence should be a defense (or base for liability apportionment) to a third party sued by a longshoreman. Gulf takes the position that the stevedore, although it has Section 933 rights by "assignment" to which its carrier is subrogated, cannot be sued under the Act as amended effective October 27, 1972, because new Section 905(b) explicitly and purposefully so provides.

The long-familiar scheme of the Act is to grant the longshoreman wage compensation (Section 908) and medical benefits (Section 907) for injuries sustained on the job without proof of employer fault (Section 904), to make the employer's liability under the Act exclusive of all other liability to the employee (Section 905) and the employee's exclusive remedy for the negligence or wrong of his fellow employees (Section 933(i)). However, the employee retains the right to sue any third person liable to him in damages for the same injury. If the employee has accepted compensation "under an award in a compensation order," that operates to assign the employee's right to recover damages from a third-party wrongdoer unless the employee sues the third party within six months after the award. The employer (or his subrogated carrier) retains out of the recovery the expense of suit, the amount of medical benefit expended, the compensation paid, and the present value of future compensation and benefits and pays the balance to the employee. If the employee sues, the employer is liable for compensation and benefit only to the extent that the amount of it exceeds the third-party recovery. It will be seen from this that "lien" is simply a shorthand and approximate expression, and is not an exact legal description of the employer's interest in the third party action.

Before the 1972 changes the third party tort-feasor, typically the shipowner, could claim over against an employer whose fault rendered him liable to the shipowner for the shipowner's being mulcted in damages by the employee. Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. Earlier, Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143, had made it · clear that the shipowner was liable for the whole damage without reduction for compensation payments made by the employer, and still earlier Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 had held that where shipowner and employer were in concurrent fault, the whole damage recovered by the employee against the shipowner could not be apportioned between shipowner and employer under any doctrine of contribution. A later-developed corollary of Ryan was that certain kinds of breaches of duty owed by shipowner to stevedore could preclude the shipowner from successfully claiming-over against the stevedore. Weyerhauser S.S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491. More recently Federal Marine Terminals v. Burnside Shipping Co., 1969, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371, declined to hold the employer was limited to his rights under Section 933. There the third party recovery for wrongful death because of a statutory ceiling would inevitably be smaller than the compensation payments. The employer, the court held, could claim against the ship for the whole of the compensation payments if it showed that the ship had breached a duty owed to it. Most recently Cooper Stevedoring Co. v. Fritz Kopke, Inc., 1974, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694, has held that where the shipowner impleads a third party wrongdoer other than the employer, and who could, therefore, have been sued by the employee, contribution will be enforced (where complete indemnity is not available)—without renouncing the rule of Halcyon where the impleaded party is the employer and Section 933 is operative.

The plexus of relations among shipowner, longshoreman (or other harbor worker), employer of longshoreman and third party tort-feasor acting concurrently with shipowner and (i) being the longshoreman's employer and having or not having breached a duty owed to the shipowner and (ii) being a non-employer concurrent tort-feasor having or not having breached a duty to the shipowner, that plexus of relations is reaching maturity of definition in the cases. The question here is, how much of it is swept away by the 1972 enactment of Section 905(b) as between shipowner and stevedore-employer of the injured longshoreman who has sued the shipowner alleging his negligence, denying his own, and asserting (although not relying on) the fact that the unsafe condition complained was also a condition of unseaworthiness?

Section 905(b) now provides

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no .such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel

under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

Analysis is helped if Section 933 is treated as (a) requiring the precise *Pope & Talbot* result, *i. e.*, that the compensation award does not reduce the damages recoverable against the third party wrongdoer; (b) definitely not depriving the employer-wrongdoer of any rights of suit he has against the third-party wrongdoer to recover for his own damage (including his liability to the longshoreman under the Act); (c) not itself the source of the wrong-doing employer's rights of action against the third-party wrongdoer, since those rights rest on subrogation and the whole range of legal duties that a shipowner may owe to a business visitor and its employees; and (d) really a time—regulatory mechanism determining the time during which the longshoreman must be accorded the prior and exclusive right to initiate suit based on the third-party tort (not on any tort committed against the stevedore or breach of contract duty committed against the stevedore by the shipowner). The shipowner's claimover against the stevedore or other third-party wrongdoer for indemnity or contribution is separate, normally a Rule 14 claim that, in pure indemnity law apart from Rule 14, is not ripe for suit until after the shipowner is cast in judgment and has paid it.

Was Section 905(b) meant, in exchange for abolishing the unseaworthiness ground of liability, to abolish every sort of right to pass on some or all of the shipowner's liability to the longshoreman to the employer? Even if that meant that a trivial, but legally

sufficient, amount of negligence toward the longshoreman would enable the employer to off-load to the shipowner his entire liability under the Act even though the employer's negligence was the most significant proximate cause of the accident, and the employer was in breach of duties that he owed to the shipowner in respect of the accident and damage?

The language of Section 905(b) leaves no room for escape from the conclusion that the section means exactly that sweeping and painful result. The examination of the background and history of the legislative change in Lucas v. "Brinknes" GES. Franz Lange G. m.b.h. & Co., K.G., 379 F.Supp. 759 E.D.Pa.1974, confirms the conclusion. Since the constitutional power of Congress to effect so sweeping a change is neither challenged nor conceded, it must not be considered at this time.

Since these considerations altogether dispose of Gulf's interest, the interests of justice require that it now receive its dismissal from the action.

It is, accordingly,

Ordered that the motion of defendant and plaintiff seeking joinder to strike the affirmative defense of the plaintiff defendant, or involuntary plaintiff Gulf Insurance Co. is denied and the motion of said plaintiff, defendant, and involuntary plaintiff to strike or dismiss the complaint bringing it into the case is granted; and it is further

Ordered that the Clerk is expressly directed now to enter judgment that defendant "plaintiff" seeking joinder A/S Arcadia, sued as Lief Hoegh and Co., Inc. take nothing as against plaintiff or defendant or involuntary plaintiff Gulf Insurance Company and that complaint—over under Rule 19(a) and the claims therein set forth are dismissed.