**GRASSO v. LORENTZEN, Director of Shipping, etc.**

District Court, S. D. New York,
March 21, 1944.

52

Jacob Rassner, of New York City, for libelant.

Haight, Griffin, Deming & Gardner, of New York City (Edgar R. Kraetzer and J. Ward O'Neill, both of New York City, of counsel), for respondent.

GODDARD, District Judge.

This is a suit in admiralty to recover damages for personal injuries sustained by the libelant.

The libellant Grasso was a stevedore in the employ of the Northern Dock Company, contracting stevedores engaged in loading cargo on the S. S. Torvanger, which was docked at the New York State Pier at the foot of Columbia Street, South Brooklyn.

On May 15, 1942, about 10:45 in the forenoon, Grasso was working in No. 2 hold with several other stevedores shifting large crates containing tanks for the Army, which had been lowered into the hold from a lighter alongside the ship. To move the crates into position a cable leading from the winch on the upper deck, operated by the stevedores, was used. This cable passed through a snatch block which was located near the corner of the hold, so that when power was applied to the cable it pulled the grate into the position desired. The snatch block was fastened to a "strap" which passed around one of the ship's upright iron beams. The strap consisted of a wire rope an inch in diameter, six feet long, with a loop at each end into which a hook on the snatch block was hooked. The strap was passed around the upright beam near the top and was held in place by an iron gusset plate which was fastened to the upright at a sharp angle. In the process of moving one of the crates the strap broke, the snatch block fell striking Grasso and injuring him. Shortly after this happened the strap was examined and it was found that the strap had broken near the middle; that for about a distance of some six inches each way from the break the strands were rusted all the way through and that this portion was brittle and weak.

Although respondent contends to the contrary, the evidence is convincing that this strap was the ship's property and that the stevedores found it hanging on a beam in the hold when they began this work. The evidence also established the fact that it was customary for stevedores to furnish their own gear including straps and they did in this instance supply straps, but those working in the hold, seeing this strap, used it and had been using it for some fifteen operations before it broke.

Respondent urges that acceptance "of compensation under an award in a compensation order filed by the Deputy Commissioner" was proved and constitutes a bar to this action; it also denies that any negligence of the respondent was the proximate cause of libelant's injury.

The file of the Deputy Commissioner covering the case supplemented by an agreed statement of facts is included in the record. From these, it appears that Northern Dock Company, Grasso's employer, carried compensation insurance with the Travellers Insurance Company [hereinafter referred to as Travellers]; that at the end of the second week of disability [the first seven days

being exempt, 33 U.S.C.A. § 906(a)], Travellers paid Grasso the first payment of compensation in accordance with the Longshoremen's and Harbor Workers' Compensation Act. Having received a report from its examining physician that Grasso would be able to resume light work on August 4, 1942, Travellers certified under date of August 4th that it had paid $214.29 compensation and would make no further payments. On August 3rd Grasso reported to the Commission that he was still unable to work and protested the stopping of his compensation. The Commission had Grasso examined again and notified Grasso and Travellers to attend a conference on September 14th. A memorandum of this conference with the action taken was prepared by the Claims examiner and placed in the Commission's files, and a copy was sent to Grasso and the Travellers. It reads as follows:

"File #65-166
"September 17, 1942
"Memorandum of Informal Conference
"Re: Santo Grasso v. Northern Dock Company
"Date of Conference: September 14, 1942
"Purpose of Conference: Consideration of extent of disability
"Appearances: Claimant present. Mr. Markey representing the employer and carrier.

\* \* \* \* \* \*

"Claimant, a longshoreman, met with an accidental injury on May 15, 1942 when as he was stowing freight aboard a steamship afloat in New York harbor, a cable snapped and struck him in the back causing him to fall a distance of about five feet off the top of a lead of cases. He sustained shock, fracture of the ribs on the right side, and pleurisy.

"Treatment was rendered in accordance with Section 7(a) of the Act, and claimant was discharged as able to resume his work on July 29, 1942. Compensation has been paid for temporary total disability from May 15, 1942 to July 28, 1942 inclusive, a period of 10-5/7th weeks at $20 per week in the sum of $214.29.

"On August 14, 1942, claimant was examined at the U.S. Marine Hospital and in the examination and report, the opinion was expressed that he needed further treatment and was unable to resume his usual work. At the conference claimant alleged total disability to date. He has since been re-examined by the carrier's physician, and further treatment will be furnished by the carrier.

"It is recommended that additional compensation be paid for temporary total disability from July 29, 1942 to September 14, 1942—6-6/7th weeks at $20.00 per week—in the sum of $137.14. The case is continued for re-examination of disability by the attending physician.

"D. B. O'Keeffe,
"DBO:MB                Claims Examiner
"cc  Claimant and carrier."

At this conference the Claims Examiner for the Commission recommended that additional compensation be paid up to that date amounting to $137.14, which the Travellers paid, notifying the deputy commissioner that no further payments would be made until Grasso established lack of earning power. On November 16th Grasso was notified to appear for a further physical examination. However, when on December 4th another conference was set for December 17th Grasso's lawyer notified the Commission that Grasso "has elected to sue a third party" and a notice of election on the prescribed form dated December 17th was subsequently filed.

Respondent contends that the memorandum of September 17th followed by payment to and acceptance by Grasso of the additional compensation recommended in that memorandum constituted "acceptance of such compensation under an award in a compensation order filed by the deputy commissioner" under the Longshoremen's and Harbor Workers' Compensation Act. The pertinent sections of the Longshoremen's and Harbor Workers' Act, as amended June 25, 1938, 33 U.S.C.A. § 933(a) (b) is set forth in the margin below.[1]

Before the 1938 amendment, the Act provided that "acceptance of such compensation

[1] "§ 933.  Compensation for injuries where third persons are liable. (a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the commission may provide, to receive such compensation or to recover damages against such third person.

"(b) Acceptance of such compensation under an award in a compensation or-

shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third. person." 44 Stat. 1440. But the Congressional history of the amendment adopted in 1938 clearly indicates that the purpose of the .amendment was to provide that the mere acceptance by the injured person shall not automatically effect an assignment to his employer of his rights against a third person. And to save the injured person without knowledge of the full situation and the effect of accepting compensation, the amendment provides that its acceptance works an assignment where it is "under an award in a compensation order by the deputy commissioner." The acceptance of compensation under an award by the deputy commissioner constitutes an assignment by the injured person. Until such assignment the injured person retains any rights he may have against a third party.

▮ In the case at bar Grasso accepted compensation, but it was not under an award in a compensation order. As appears by the "Memorandum of Informal Conference" dated September 17, 1942 there were merely conferences between the claims examiner of the commission, Grasso, and the representative of his employer, resulting in recommendations by the claims examiner as to the length of disability and amount of compensation. The fact that this memorandum was produced from the files of the commission does not, as urged by respondent, change it into "an award in a compensation order filed by the deputy commissioner." To meet the requirements of Section 933(b), there must be an affirmative act or determination by the deputy commissioner.

▮ In Toomey v. Waterman S. S. Corporation, 2 Cir.. 123 F.2d 718, 751, the court said that while the amended Act did not apply to the cases then under consideration, but even if it did that the compensation was accepted "under an award in a compensation order filed by the deputy commissioner", where the deputy commissioner had noted in his records the disposition he had made of the case and that this act, though informal, was equivalent to an order and satisfied the provisions of the amendment. But in the Toomey case, the Master's report and the opinion of the Circuit Court of Appeals state that the deputy commissioner entertained the application, subjected applicant to an impartial examination, made written notes of his award, notified all parties of his decision under which the compensation was accepted, and "accomplished all he could have done by a more formal document styling itself an order." It is plain that that situation differed materially from the case at bar. That had to do with the form of the required order; this with the lack of any order, formal or informal, and the absence of essential acts by the deputy commissioner upon which any order could be based. Here, the deputy commissioner never passed on the claim; never made an award. I think that the libelant's acceptance of compensation under the circumstances did not effect an assignment and does not bar his right to recover indemnity from respondent. Cf. Brusich v. Grace Line, Inc., D.C.S.D.N.Y., 56 F.Supp. 48, opinion of Judge Caffey; Sessa v. Weeks Stevedoring Co., Inc., D.C.E.D.N.Y., 56 F.Supp. 50, opinion of Judge Moscowitz; Pugliese v. Panama Transport Co.,[2] Coxe, J., Southern District of New York, October 5, 1943; Cupo v. Isthmian Steamship Co., D.C.S.D.N.Y., 56 F.Supp. 45, opinion Leibell, J.; Iaria v. Silver Line, Ltd., D.C.S.D.N.Y., 56 F.Supp. 42, Mandelbaum, J.

▮ The employer's right to reimbursement out of the employee's recovery from third persons for the compensation paid to the employee remains unaffected. It is only the right of control of the employee's right of action against third persons which an employer foregoes by paying compensation without an award. The Etna, 3 Cir., 138 F.2d 37.

▮ However, I do not think that the libellant has proved that any negligence of the respondent was the proximate cause of his injury. It was established custom for the contracting stevedore to supply its own gear, including straps; this was well understood by all and the Northern Dock Company did supply straps, snatch blocks and similar gear for its employees but they, finding a strap in the hold, used it instead of one of their employer's and did so without the consent or knowledge of the ship's officers or crew.

It does not seem to me that under the cir-

---

der filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person."

[2] No opinion for publication.

cumstances the ship should be held responsible for the result. The stevedores chose to use it instead of one of their own. In doing so they assumed the risk. It was their duty, not the ship's, to see that it was fit for their purposes. Captain Ross, stevedore superintendent of the Northern Dock Company, testified that it was that company's established custom and practice to examine and inspect a strap before assigning it for use and that company usually assigned two to four men for this purpose. However, the only testimony as to any inspection of the strap in question is that of Grasso's foreman and another member of the gang working with Grasso who said they looked at the strap and "it looked all right." As the strap was on a beam high above their heads, this might well have been inadequate to determine its condition.

If the contracting stevedore had undertaken to furnish planks needed in loading cargo and, instead of using one of its own, found some planks on board and used one of those which turned out to be rotten and as a result one of its employees was injured, the ship could hardly be held liable to the injured man.

There is no doubt that where a shipowner undertakes to supply the gear and equipment, it is encumbent upon it to see that the gear is reasonably safe for the purposes for which it is supplied. Even where equipment is furnished by the ship, the employing stevedore must make a reasonable inspection of it. Port of New York Stevedoring Corporation v. Castagna, 2 Cir., 280 F. 618, certiorari denied 258 U.S. 631, 42 S.Ct. 463, 66 L.Ed. 801. This strap, unlike a ringbolt attached to the ship or any permanent appliance, was part of the gear which the contracting stevedore, not the ship, had undertaken to supply.

In Jeffries et al. v. De Hart, 3 Cir., 102 F. 765, the contracting stevedore had contracted to furnish the necessary gear for loading cargo, but the stevedores ran short of gear and the ship's officer permitted him to select some rope and gear from a large quantity on board owned by the ship, and it was held that the shipowner owed no duty to the stevedore employed by the contractor to supervise or control such selection and was not liable for damages to the stevedore caused by the giving away of such tackle. See Long v. Silver Line, Ltd., 2 Cir., 48 F. 2d 15; The Persian Monarch, 2 Cir., 55 F. 333.

In Cornec et al. v. Baltimore & O. R. Co. et al., 4 Cir., 48 F.2d 497, 502, it was held that where the loading of a vessel was in charge of an independent contractor who furnished the loading apparatus, the master of the ship "had no duty or right of supervision as to instrumentalities adopted and methods used."

Accordingly, I find that the libelant has no cause of action against the respondent and the respondent may have a decree dismissing the libel. Respondent to submit findings of fact and conclusions of law on ten days notice.