**Vito VALENTINO, Plaintiff,**

v.

**RICKNERS RHEDEREI, G. m. B. H., SS ETHA, Defendant.**

**No. 74 C 631.**

United States District Court,
E. D. New York.

June 24, 1976.

Irving B. Bushlow, Brooklyn, N. Y., for plaintiff.

Haight, Gardner, Poor & Havens, New York City, for defendant, by William P. Kain, Jr., New York City.

McHugh, Heckman, Smith & Leonard, New York City, for intervenor, by Martin J. McHugh, New York City.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Plaintiff, a longshoreman employed by a stevedore, was injured while working aboard a vessel owned by the defendant. The stevedore had paid $15,488.31 for medical and other expenses of the plaintiff and had a lien for that amount on any recovery by the plaintiff. Plaintiff was awarded $5,000.00 by the jury.

Counsel for plaintiff moved to be awarded a fee out of the proceeds of the suit. The stevedore then intervened to oppose the motion in order to preserve its priority of lien on the $5,000.00 recovery. It took no other action during the course of the litigation.

On a recovery of $5,000.00 the contingent fee retainer agreement between plaintiff and his attorney provides for $2,000.00 in attorney's fees and expenses plus $70.00 for court costs without deductions for liens. It reads in pertinent part as follows:

" . . . such percentages shall be computed on the net sum recovered after deducting taxable costs . . . . But for the following or similar items, there shall be no deduction in computing such percentages: liens . . . . "

Plaintiff's attorney has expressed the intention to turn over the fee to the client. Without conceding any obligation, the stevedore has agreed that it will reimburse plaintiff's counsel for the court costs and expert witness fees in the total sum of $420.00.

There is no issue raised by any of the parties about the reasonableness of the fee. The retainer agreement is consistent with those in general use in this jurisdiction. Given the amount of time for preparation and trial, the fee is appropriate on any quantum meruit basis. For reasons indicated below we hold that the stevedore, who will receive the sole benefit from the action, should pay the legal fee and costs and disbursements out of the sum it receives as a result of its lien.

To dispose of the usual longshoreman's injury action, the law must reconcile three interests: those of the injured longshoreman, the stevedore who hired him, and the owner on whose ship he was injured. See, generally *Landon v. Lief Hoegh & Co.,* 386 F.Supp. 1081 (E.D.N.Y.1974) (Dooling, J.), aff'd, 521 F.2d 756 (2d Cir. 1975), *cert. denied,* 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976) (describing the situation prior and subsequent to 1972 Amendments to 33 U.S.C. § 905). Under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, the stevedore compensates the longshoreman for medical and other expenses related to the accident. The longshoreman may sue the shipowner responsible for his injury; if he does not sue within six months the stevedore may bring suit. The shipowner-defendant is liable for damages to the longshoreman incurred as a result of the shipowner's negligence, with no deduction for the amount paid as compensation by the stevedore pursuant to the Act. *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

If the longshoreman brings the lawsuit, the stevedore has a lien on any recovery for the amount of medical and related expenses paid as compensation. The longshoreman

keeps the surplus. The statute makes no reference to attorneys fees in cases where the longshoreman is plaintiff.

If the stevedore sues it retains enough to satisfy its lien and attorneys fees and pays four-fifths of the remainder to the longshoreman. 33 U.S.C. § 933(e)(1). In this district, at least, it is the longshoreman rather than the stevedore who sues.

The issue raised by this case involves another distinct, though derivative, interest: that of the injured longshoreman's attorney. The question now posed is whether he should be paid out of the res secured through his efforts although the client has received no benefit. While the cases in this circuit seem to suggest that the answer has been "no," fairness and ethical considerations as well as recent changes to the Longshoremen's and Harbor Workers' Compensation Act indicate that the answer is "yes."

There are four possible fee situations. First, where the longshoreman's suit results in a recovery substantially exceeding the lien, the normal practice, as we have observed it, is for the stevedore to recoup the entire lien unless, as part of a settlement discussion, there is some voluntary reduction in its claim. As a result, in most cases the entire attorney's fee is paid out of the proceeds going to the longshoreman with, as we understand the matter, the fee being based upon a percentage of the longshoreman's share.

Second, where there is no recovery by the longshoreman there is, of course, no issue as to fee since these are all contingent fee cases. While the client is responsible for payment of the costs and disbursements in the action, it is probably not usual to press the client for these payments—a practice which does present ethical problems.

█ Third, where the recovery is less than the amount of lien we have the issue now before us. There is a fourth category of cases involving a recovery slightly above the lien. In principle the problem in this last class is essentially the same as where the recovery is for an amount less than the lien. While the fourth pattern is not before us, as we shall suggest, fairness would dictate a pro rata allocation of the attorney's fees in proportion to the amount received by the stevedore and the longshoreman as a result of the suit. Such a rule would change the practice in the first category of cases so that part of the fee would be chargeable against the stevedore's share. In short, the same rule of proportional sharing would apply to attorneys fees in longshoremen's suits no matter what the recovery.

Courts have approached the problem in a variety of ways. Some impose a lien on the recovery in the amount of payments made by the stevedore without any deduction for attorneys fees. See, e. g., *Fontana v. Pennsylvania R.*, 106 F.Supp. 461, 463–64 (S.D.N.Y.1952), *aff'd sub nom. Fontana v. Grace Lines, Inc.*, 205 F.2d 151 (2d Cir.), *cert. denied*, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953) (stevedore entitled to receive its compensation and medical expenses without deducting for attorneys fees or other litigation costs where recovery exceeded the lien); *cf. Landon v. Lief Hoegh and Co., Inc.*, 521 F.2d 756, 761 (2d Cir. 1975), *cert. denied*, 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976) (lien is described as an "express trust for the benefit of the employer" with the employee as statutory trustee). Other courts have required the legal fee paid by proportionately taxing the stevedore's and the longshoreman's share of the judgment. See, e. g., *Chouest v. A & P Boat Rentals, Inc.*, 472 F.2d 1026 (5th Cir.), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973) (recovery in excess of lien subject to assessing proportional share of the litigation costs, including attorneys fees, against longshoreman and stevedore's insurer); *cf. Ashcraft and Gerel v. Liberty Mutual Insurance Company*, 120 U.S.App. D.C. 51, 343 F.2d 333, 335 n. 3 (1965) (where there was a large excess recovery plaintiff's attorney paid entirely from employee's share; court refused to fix rule where employee receives no recovery; citing cases from other circuits). See also Fager, Should the Compensation Lien Take Precedence Over the Attorney's Lien in a Ryan

, Recovery? The Case for the Employer, 4 Forum 217 (April, 1969).

The Second Circuit's last word on this subject appears to be an affirmance in 1953 without opinion of Judge Weinfeld's opinion in *Fontana*. That case held that the employer was to be made completely whole before the employee or his attorney could receive any portion of the recovery secured in the third party suit. Following *Fontana*, district courts in the Second Circuit developed the benefits doctrine as an elaboration of the *Fontana* result. Judge Palmieri of the Southern District, faced with a situation very similar to the one now before us, wrote:

> "The issue presented . . . boils down to whether the compensation lien takes priority over an attorney's fee claim . . . .. The recovery which resulted from this litigation was smaller than the compensation lien by approximately $700.00. . . .

> While the distributive system set forth in the Longshoremen's . . . Act relates to situations in which the employer has instituted the action in behalf of the employee (33 U.S.C. § 1933), it is clear under that system that the employer is made whole before the employee or his representative can recover. The act contains no express provisions with respect to distribution in cases where the employee institutes the action, but the courts have held that the identical distributive system should be followed. [Citations omitted.]

> The interest of the injured longshoreman in this lawsuit can attach only to the excess over the employer's disbursements under the act. . . . The plaintiff's attorney stands in the shoes of his client and his attorney's lien can attach to nothing since *he has produced no benefit for his client*. It would be anomalous and indeed patently inconsistent with the distributive scheme set forth in the compensation act to provide compensation for the plaintiff's attorney at the expense of the stevedore's insurance carrier which

has paid out the benefits already collected by the plaintiff."

*Spano v. N. V. Stoomvaart Maatschappij "Nederland" v. American Stevedores, Inc.*, 340 F.Supp. 1194, 1195–6 (S.D.N.Y. 1971) (emphasis supplied).

See also *Russo v. Flota Mercante Grancolombiana v. American Stevedores, Inc.*, 303 F.Supp. 1404, 1407 (S.D.N.Y.1969) ("To permit plaintiff's attorney to recover his contingent fee claim would be to reward him, even though he has been unsuccessful in benefitting his only client, at the expense of the carrier which has already paid out the minimum compensation guaranteed to plaintiff under the Longshoremen's Act."). As suggested below, the benefit doctrine, if it ever was useful, has no validity under present law.

In *Scozzari v. Jade Co., Inc.*, 350 F.Supp. 801, 805 (E.D.N.Y.1972), it was assumed that the stevedore was responsible for no part of the fee, although it interpreted *Fontana* as supporting "the priority of the plaintiff's attorney's lien." The amount of recovery was $3,798.36 and the amount of the compensation lien was $2,383.30. The lawyer claimed a $1,700.00 fee based on his retainer, leaving nothing for his client. The court's solution was to announce a rule granting the compensation lien precedence over the attorney's fee and then requiring the lawyer, as an officer of the court, to share the $1,700.00 with the client. This "equitable" solution has apparently not been utilized by any other court, partly perhaps because Ethical Consideration 3–8 of the Code of Professional Responsibility prohibits a lawyer from "otherwise . . . [sharing] legal fees with a layman."

Some decisions which permitted the stevedore to recover its lien intact, without contributing to the longshoreman's attorneys fees, were influenced by a practice under the Longshoremen's Act which has been changed. Prior to the 1972 amendments to the Act, a shipowner against whom a judgment was recovered had a right to seek indemnity against the stevedore. *The 1972 Amendments to the Longshoremen's and Harbor Workers' Act: An*

*Opportunity for Equitable Uniformity in Tripartite Industrial Accident Litigation,* 19 N.Y.Law Forum 587 (1974); Note, *Admiralty-Maritime Personal Injury and Death—Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972,* 47 Tul. L.Rev. 1151 (1973). This rule meant that if a plaintiff-longshoreman were successful in winning a large recovery against the third party defendant shipowner, the shipowner could turn around and sue the stevedore for the amount of the recovery plus costs of defending the suit. Accordingly, there was a serious clash of interests between the stevedore and longshoreman. The typical longshoreman's suit against the shipowner resulted in a net loss rather than a benefit to the stevedore. The *Russo* court predicated its refusal to give the longshoreman's attorney's fee priority over the stevedore's lien in part on this conflict. Why, the court reasoned, should the stevedore pay the lawyer whose efforts merely opened him up to a shipowner's suit? *Russo v. Flota Mercante Grancolombiana v. American Stevedores, Inc.,* 303 F.Supp. 1404, 1407 (S.D.N.Y. 1969). In a case similar to *Russo,* the Fourth Circuit explicitly based a refusal to award attorney's fees to plaintiff's counsel on this conflict of interest. *Ballwanz v. Jarka Corporation of Baltimore,* 382 F.2d 433, 437 (4th Cir. 1967).

But other circuit courts did not adopt this conflict of interest reasoning. They accepted plaintiff's argument that the conflict was more apparent than real and allowed attorney's fees to be awarded to plaintiff's counsel before the employer's lien was satisfied. Thus, in *Chouest v. A & P Boat Rentals, Inc.,* 472 F.2d 1026, 1032 (5th Cir.), *cert. denied,* 412 U.S. 949, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973), Judge Wisdom, writing for the Fifth Circuit, noted:

> "Especially when his compensation payments to the injured employee have been sizeable, the employer or his carrier will want to recoup these payments . . . . Recoupment depends directly upon the success of the employee's action against the shipowner. The employer will also want to protect himself from a claim for indemnity asserted against him

> by the shipowner. . . . If the employer weighs his interests and decides that he is more concerned to defend himself from the shipowner's claim . . . his interests temporarily appear adverse to those of the plaintiff. When the dust settles . . . and the employer accepts a check for the amount of his compensation advances . . . he suddenly discovers that his interests are not entirely adverse to those of the employee plaintiff after all."

The *Chouest* recovery exceeded by $348.39 the value of the lien. Legal fees were paid by proportionate contribution from both the plaintiff and the lien holder.

The fundamental policy of the 1972 amendments underscored the *Chouest* rationale. An indemnity action by the shipowner against the stevedore was forbidden. 33 U.S.C. § 905, Pub.L. 92–576, 1972. By removing any possible conflict of interest between the stevedore and the longshoreman, the amendments supported the notion that the plaintiff-longshoreman's attorney was rendering a service for the stevedore-lien-holder. The larger the recovery in the longshoreman's suit against the shipowner, the greater the chance that his employer's, the stevedore's, lien will be satisfied.

Adapting itself to the new legal relationship between stevedore and shipowner, the Fourth Circuit abandoned its 1967 rule in *Ballwanz,* and adapted the *Chouest* reasoning to the post-1972 amendment situation, and granted plaintiff's attorney a fee:

> "By the amendment of 1972 the right of indemnity . . . was eliminated . . . . Accordingly, there is not the conflict in rights between the longshoreman and the stevedore that prevailed in *Ballwanz* and that was at the heart of the decision in that case. The longshoreman and the stevedore now have a common interest in the maintenance of the third-party action and both stand to gain from it. . . . Provided that pecuniary advantage is secured through the services of counsel employed by the longshoreman, the stevedore should be taxed with that part of a reasonable fee for the

long-shoreman's counsel as is proportioned to its share of recovery."

*Swift v. Bolten*, 517 F.2d 368, 370 (4th Cir. 1975).

Although *Swift* does not address the lack of benefits doctrine relied upon by the Second Circuit line of cases, it is most persuasive in its treatment of the post-1972 situation. The 1972 amendments to the Act mean that there is an undeniable benefit to the stevedore. A res is created out of which a fee can reasonably be paid.

█ Under the rule of *Swift*, the lawyer has a vested interest in the litigation which may be somewhat different from that of his or her client. We observe, however, that the conduct of the admiralty bar in this court suggests that it is highly unlikely that lawyers will act to the disadvantage of a client by arranging settlements for less than the lien in order to obtain a quick fee. As a matter of economics as well as ethics, such an attitude would quickly lead to the loss of all longshoremen cases by the lawyer. Moreover, since the client must approve the settlement and since a large proportion of the settlements are conducted under the supervision of the courts, this kind of "sellout" cannot occur in any appreciable number of cases. Ethical Consideration 5–7 of the Code of Professional Responsibility impliedly rejects the argument that contingent fees are undesirable because of this possibility of conflict with the client. It reads as follows, in part:

"It is not improper for a lawyer to protect his right to collect a fee for his services by the assertion of legally permissible liens, even though by doing so he may acquire an interest in the outcome of litigation. Although a contingent fee arrangement gives a lawyer a financial interest in the outcome of litigation, a reasonable contingent fee is permissible in civil cases because it may be the only means by which a layman can obtain the services of a lawyer of his choice."

In weighing the conflicting interests it is necessary to give substantial weight to the public policy favoring contingent fees because they make it possible for the poor and middle class to vindicate their substantive rights. American law has long recognized contingent fee arrangements as a practical method of permitting workers such as longshoremen to protect their legal rights. As ethical consideration 2–20 of the Code of Professional Responsibility puts it:

"Contingent fee arrangements in civil cases have long been commonly accepted in the United States in proceedings to enforce claims. The historical bases of their acceptance are that (1) they often, and in a variety of circumstances, provide the only practical means by which one having a claim against another can economically afford, finance, and obtain the services of a competent lawyer to prosecute his claim, and (2) a successful prosecution of the claim produces a res out of which the fee can be paid."

See also F. B. MacKinnon, Contingent Fees For Legal Services: A Study of Professional Economics and Responsibility (1964).

Finally, there is the hidden issue of the desire by some to discourage suits which probably would not be brought were there a rule denying attorneys' fees in any case where the recovery was less than the lien. Given the crowded calendars and other pressures on the federal courts, it is tempting to attempt to discourage this category of cases by ruling that the attorney can receive no fee unless the recovery is larger than the lien and requiring that the contingent fee to the lawyer shall be based only upon the surplus going to the longshoreman. Overcrowded court dockets is not an appropriate reason for a rule which would reduce the value of a contingent fee arrangement and thus close the courts to many longshoremen. Speaking of this problem in his thorough study, "Contingent Fees for Legal Services," 201 (1964), F. B. MacKinnon summarized a report of the American Bar Foundation with the following observations:

"It has been charged, also, that the contingent fee has indirectly contributed

to the crowding of dockets and the consequent delay of justice. This charge is based on the assertion that, because of his direct interest, a lawyer is reluctant to dismiss a groundless suit, and, indeed, encourages clients to file such suits for their nuisance value. Instances of such practices have been discovered; for example, lawyers have knowingly filed suits for alleged injuries from nonexistent accidents. However, the number of such examples is small. On the other side of the coin, the recent investigations in New York City and Philadelphia disclosed that lawyers were selective in their acceptance of cases, refusing to accept those in which the chances of recovery were slight."

See also, e. g., Schwartz & Mitchell, Economic Analysis of the Contingent Fee in Personal-Injury Litigation, 22 Stan.L.Rev. 1125 (1970); Note, Contingent Fee: Champerty or Champion?, 21 Clev.St.L.Rev. 15 (1972). Our courts have generally shown an antipathy to any rule cutting off longshoremen from their remedies in court. See, e. g., Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); G. Gilmore & C. L. Black, Jr., The Law of Admiralty 447 (2d ed. 1975).

Unless and until Congress resolves this issue by filling lacunae in the statute, the rule which should be applied is that of *Swift v. Bolton*. *Swift* does not, we recognize, solve the statutory dilemma. For, if the stevedore sues, under the statute it obtains its full lien and all its counsel fees and expenses before the longshoreman can receive anything, while under *Swift* the stevedore's recovery is reduced by deduction from the lien of at least part of the legal fee. There is no completely satisfactory solution to the problem. Until Congress speaks the courts must attempt to fashion a rule that does least violence to the statutory scheme and general principle.

Plaintiff's motion for payment of fees, costs and disbursements to his attorney is granted. The attorney may not share this fee with the client.

So Ordered.