564 F.2d 1097
 LIBERTY MUTUAL INSURANCE COMPANY, Appellant,
v.
AMETA & COMPANY, Owner of the M/V Concordia Ameta, and
Maurice Melson, Appellees.
LIBERTY MUTUAL INSURANCE COMPANY, Appellee,
v.
AMETA & COMPANY, Owner of the M/V Concordia Ameta, and
Maurice Melson, Appellants.
 Nos. 76-1961 and 76-1962.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 2, 1977.
Decided Oct. 18, 1977.
 
 John R. Crumpler, Jr., Norfolk, Va. (Harry E. McCoy, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., on brief), for appellants in 76-1962 and for appellees in 76-1961.
 L. S. Parsons, Norfolk, Va. (Parsons, Steffen & Moore, Norfolk, Va., on brief), for appellant in 76-1961 and for appellee in 76-1962.
 Before BUTZNER, Circuit Judge, FIELD, Senior Circuit Judge, and HALL, Circuit Judge.
 K. K. HALL, Circuit Judge:
 
 
 1
 This case involves an appeal by the plaintiff, Liberty Mutual Insurance Company, and cross-appeals by the defendants, Ameta and Company, a shipowner, and Maurice Melson, a longshoreman, from determinations adverse to each of them made by the district court in its rulings upon the cross-motions for partial summary judgment filed by the parties. Also at issue is the judgment for the defendants entered following a trial to the court on the issues unresolved by the summary judgment motions.
 
 
 2
 The legal issues involved deal with interpretations of various of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (hereinafter referred to as the Act) and the relationships that legally exist between the insurance carrier for a stevedoring company-employer, the shipowner, the injured longshoreman-employee, and the respective counsel in a factual setting wherein the injured employee is paid benefits under the Act, and also obtains a voluntary settlement from the shipowner whose alleged negligence caused the injury to the longshoreman-employee.
 
 
 3
 We agree in part and disagree in part with the various rulings of the district court and accordingly affirm in part, reverse in part, and remand for the entry of a judgment in conformance with this opinion.
 
 I.
 FACTS
 
 4
 Maurice Melson (hereinafter referred to as Melson) was employed as a longshoreman by Southern Stevedoring Corporation (hereinafter referred to as stevedoring co.) on October 14, 1974. On that day, while he was working on the CONCORDIA/AMETA (hereinafter referred to as the ship), owned by Ameta and Company (hereinafter referred to as the shipowner), he sustained foot and ankle injuries.
 
 
 5
 The stevedoring co. was insured against liability for such injuries by Liberty Mutual Insurance Company (hereinafter referred to as the insurance carrier). Melson's employer promptly notified the Bureau of Employee's Compensation, U.S. Department of Labor, of the injury,[1] and the insurance carrier for the stevedoring co. thereafter made compensation payments to Melson pursuant to the Act and the contract between the stevedoring co. and the insurance carrier. He received payments from October 14, 1974, the date of the accident, through December 12, 1974. The sum paid was $1,220.28,[2] and was distributed to Melson voluntarily by the insurance carrier without a formal award.[3]
 
 
 6
 Thereafter, Melson, through counsel, asserted a claim for damages for the personal injuries he received against the shipowner based upon negligence principles and general maritime law.[4] No actual litigation was ever filed, and Melson's claim was settled prior to suit.[5]
 
 
 7
 Under the terms of the settlement, Melson received $1,000.00 and released the shipowner and ship from any liability which they had to him arising out of the accident. In addition to the release, Melson and the shipowner jointly executed an indemnity agreement wherein the shipowner agreed to indemnify Melson up to $1,000.00 for all claims or lawsuits brought by the insurance carrier to recover any compensation payments. It was undisputed that the shipowner was aware of the payments by the insurance carrier to Melson as compensation and its lien for such payments.
 
 
 8
 Unable to recoup its lien, the insurance carrier filed suit against the shipowner and Melson seeking to recover from them the entire sum of the payments it had made to Melson $1,220.28. In count one of the complaint, the insurance carrier alleged that by virtue of its payment of compensation benefits to Melson, any causes of action he possessed because of his injuries against the shipowner were subrogated by operation of law to it for prosecution. 33 U.S.C. §§ 933(b), (d), and (h).
 
 
 9
 In count two, the insurance carrier, seeking to stand in Melson's shoes, asserted a claim against the ship based upon general negligence principles and sought money damages.
 
 
 10
 An amended complaint added a third count which asserted that the insurance carrier was entitled to recover the monies it paid Melson on non-statutory-equitable grounds alleging that Melson was a trustee, was doubly enriched, and was unjustly enriched. Thereafter, the cross-motions for partial summary judgment were filed.
 
 
 11
 The insurance carrier filed a nonspecific motion generally seeking summary judgment in its favor and recovery of the monies it had expended. Melson responded by arguing that his financial liability, if any, was limited to the monies he actually received in the negotiated settlement which was $666.66 ($1,000.00 settlement less $333.33).[6]
 
 
 12
 The shipowner filed its cross-motion for summary judgment raising various legal defenses. It contended that count one of the complaint was improper because the Act allows a suit by the insurance carrier[7] against the shipowner only after a compensation "award" had been made, and then only after six months had passed wherein the employee had not filed suit. Since the compensation claim by Melson had not been controverted, but was settled voluntarily, then there was no "award" under 33 U.S.C. § 933(b); no assignment under 33 U.S.C. § 933(d); and no subrogation under 33 U.S.C. § 933(h).
 
 
 13
 The shipowner further argued that counts two and three were improper because the Act gave injured employees their exclusive remedy against the shipowner, 33 U.S.C. § 905(b). Since these counts sought recovery on non-statutory grounds, they were legally insufficient.
 
 
 14
 Judge MacKenzie held that: (1) the claims of Melson were subrogated to the insurance carrier without the need for a formal "award" relying upon the prompt pay requirements of 33 U.S.C. § 914(a) and the intent of the Act; (2) that the insurance carrier could recover in its subrogation suit by virtue of the Act itself relying upon 33 U.S.C. §§ 933(b), 907(h), and by virtue of an equitable assignment without proof of further negligence on the part of the shipowner; (3) that the insurance carrier would be granted judgment, but only for the $1,000.00 which represented the settlement proceeds; (4) that the insurance carrier could further pursue its negligence claim against the shipowner for the remainder of its lien ($1,220.28 less $1,000.00 = $220.28) if it chose to; and (5) that any damages awarded against the shipowner were not subject to any "equitable credit" or apportionment of fault between the shipowner and stevedore.[8]
 
 
 15
 The $220.28 negligence suit was then tried to the court, and Judge Kellam entered judgment for the defendants, Melson and the shipowner. The insurance carrier appealed. Melson and the shipowner cross-appealed.
 
 II.
 THE "AWARD" PROBLEM
 
 16
 The liability of the shipowner to the insurance carrier turns in part upon whether there was an "award" under the Act. The shipowner contends that since Melson received compensation voluntarily, without a formal award, then under 33 U.S.C. § 933(b), 933(d), and 933(h),[9] there was no assignment to the stevedoring co. and thence to the insurance carrier of Melson's rights against the shipowner to seek recovery for the personal injuries sustained by Melson. The insurance carrier contends: (1) that a formal award is not necessary under the Act all that is required is payment and acceptance of compensation; (2) that the various documents filed in this case[10] with the Bureau of Employees Compensation, U.S. Department of Labor, collectively constitute an "award" under the Act where the deputy commissioner has received and filed them; (3) that a voluntary settlement under analogous workmen's compensation laws constitutes an "award"; and (4) that the policy of the Act, designed to promote settlements, would be frustrated if a stevedoring company-employer was required to controvert every claim in order to protect its lien rights. While we agree in principle with the insurance carrier, our focus under 33 U.S.C. § 933(b) is somewhat broader than the position it asserts.
 
 
 17
 The key to the statutory assignment of rights created by 33 U.S.C. § 933(b) lies in the entire phrase:
 
 
 18
 "Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer . . . ."
 
 
 19
 Two decisions and reference to parallel language regarding "awards" in various sections of the Act demonstrate that an award under a compensation order does not require formal entry of an award per se. Rather, the focus should properly be upon some act of ratification of compensation, whether formal or informal, and the subsequent acceptance of compensation by the claimant.
 
 
 20
 In Didier v. Crescent Wharf & Warehouse Co., 15 F.Supp. 91 (S.D.Cal.1936), a suit wherein the court was required to interpret the term "compensation order" as contained in 33 U.S.C. § 921(a), it was held that:
 
 
 21
 ". . . the phrase 'a compensation order' in clause (a) of section 921, title 33, U.S.C.A., means any order relating to compensation, whether granting it or denying it."
 
 
 22
 15 F.Supp. 91, 93. Emphasis in original.
 
 
 23
 In Grasso v. Lorentzen, 56 F.Supp. 51 (S.D.N.Y.1944), aff'd, 149 F.2d 127 (2nd Cir. 1945), cert. denied, 326 U.S. 743, 66 S.Ct. 57, 90 L.Ed. 444 (1945), a case involving 33 U.S.C. § 933(b), the court was faced with a claimant who was injured while working as a stevedore and who had accepted compensation benefits from his employer's insurance carrier from the date of his injuries until approximately eleven weeks later. At this time, a dispute arose over the continued disability of the claimant. An informal conference was held by the claims examiner and he reduced his recommendations to memorandum form and placed them in the official file. The memorandum recommended, but did not require or approve, payment of additional compensation. Nevertheless, the insurance carrier paid the additional recommended sums and the claimant accepted them.
 
 
 24
 Thereafter, the claimant filed suit to recover damages for personal injuries and the defendant-shipowner argued that the suit was barred under 33 U.S.C. § 933(b) because the claimant had accepted compensation pursuant to a "compensation order" (the memorandum dictated by the claims examiner after the informal conference). The district court disagreed and the court of appeals affirmed holding that the placement of the claims examiner's memorandum in the file did not constitute "an award in a compensation order" because it was advisory and did not constitute official action.
 
 
 25
 The district court, having reviewed the legislative history behind § 933(b), stated that in order:
 
 
 26
 "(t)o meet the requirements of Section 933(b), there must be an affirmative act or determination by the deputy commissioner."
 
 
 27
 56 F.Supp. 51, 54. Emphasis added.
 
 
 28
 Thus, some act, or some order, whether formal or informal, must occur in order for there to be a compensation award. Ibid. ; 149 F.2d 127, 128-9; see also: 1 Norris, The Law of Maritime Personal Injuries 3d § 95 at 172-3 (Lawyers Cooperative Publishing Co. 1975).
 
 
 29
 Parallel statutory language also supports the above interpretation of the "compensation order-award" issue. 33 U.S.C. § 921(d), also discussed by the court in Didier, supra, 15 F.Supp. 91, 94, refers to a compensation order as one which either rejects a claim or makes an award. Another section, 33 U.S.C. § 919(e), relating to the procedure for processing claims explicitly provides in part that:
 
 
 30
 "(t)he order rejecting the claim or making the award (referred to in this chapter as a compensation order ) shall be filed in the office of the deputy commissioner, . . ."
 
 
 31
 33 U.S.C. § 919(e). Emphasis added.
 
 
 32
 In this case, the numerous documents set forth above in footnote 10 all were duly received, filed and accepted by the deputy commissioner, Bureau of Employees Compensation, U. S. Department of Labor. Compensation payments were made and thereafter terminated pursuant to these documents. We hold that the documents set forth in footnote 10 above constituted sufficient affirmative action and a determination by the deputy commissioner granting benefits to Melson so as to constitute an "award" of benefits in a compensation order under 33 U.S.C. § 933(b) without the entry of a formal award. Melson's rights against third parties were assigned by operation of law to his employer, the stevedoring co., 33 U.S.C. § 933(b), and thereafter subrogated by operation of law to the insurance carrier. 33 U.S.C. § 933(h).
 
 
 33
 We believe this result is a logical one. A stevedore-employer should not be required to controvert every claim for compensation under the Act simply to ensure the entry of a formal award in order to preserve the statutory assignment and subrogation rights of the stevedore-employer and insurance carrier under 33 U.S.C. §§ 933(b) and (h). Such a requirement would frustrate the Act's time-honored purpose which was to eliminate the delay and expense incident to litigation, Wheeling Corrugating Co. v. McManigal, 41 F.2d 593, 595 (4th Cir. 1930), and cripple the congressionally explicit goal of prompt payment of claims that need not be controverted by employers. 33 U.S.C. § 914; 20 C.F.R. § 702.231.[11] On this point, the district court is affirmed.
 
 III.
 THE RELEASE PROBLEM
 
 34
 The liability of the shipowner also turns in part upon whether or not the release given by Melson to the shipowner, when the claim for damages against the ship was settled for $1,000.00, bars the suit by the insurance carrier. The shipowner contends that since the insurance carrier-subrogee stands in the shoes of Melson, the subrogor, and since Melson released all claims he had against the shipowner for the $1,000.00, then the suit by the insurance carrier is barred by the release. The insurance carrier contends that the release which was executed solely between Melson and the shipowner and without the consent of the stevedore co.-employer, or its insurance carrier, is not binding on the latter parties nor can it affect the shipowner's liability for the prior statutory lien created for the benefits paid to Melson. The district court held that the release did not bar the insurance carrier's claim; we agree and affirm on this point.
 
 
 35
 As noted above, the insurance carrier's lien was statutorily created when compensation payments were made to Melson. The insurance carrier is therefore not bound by a release subsequently executed by Melson with the shipowner to which it is not a party, did not consent to, and about which it did not know. See generally : 2A C.J.S. Agency § 233 (1972).
 
 IV.
 THE AMOUNT OF THE RECOVERY
 A.
 THE FULL AMOUNT
 
 36
 The insurance carrier first contends that the entire lien ($1,220.28) was recoverable from Melson and/or the shipowner because they settled the disputed claim for less than the insurance carrier's lien, of which they were admittedly aware, without binding the insurance carrier to that settlement in writing, 33 U.S.C. §§ 933(f) and (g), and whereafter they entered into an indemnity agreement to protect Melson from claims by the insurance carrier relative to the settlement proceeds.
 
 
 37
 The shipowner's position is that such a rule would frustrate the process of achieving voluntary settlements under the Act when, for example, a shipowner, facing an unliquidated damage claim by an injured longshoreman, is able to dispose of the claim by a compromise at less than its threatened exposure irrespective of whether the settled sum is less than the full lien of the insurance carrier, or not. Further, without the execution of an indemnity agreement as was executed between the shipowner and Melson, any settlement would be unlikely. We agree with the district court that the insurance carrier is not automatically entitled to recovery of its entire lien in this case. Rather, the district court properly allowed the case to proceed to trial on negligence principles for the excess of the amount of the lien over the settlement proceeds.
 
 B.
 ATTORNEY'S FEES
 
 38
 The next issue is whether the judgment in favor of the insurance carrier against Melson and the shipowner should be reduced by the amount of the attorney's fee paid to Melson's counsel. While the district court recognized that Melson only received $666.66 (or 2/3) of the $1,000.00 settlement, it nevertheless entered judgment jointly against Melson and the shipowner for the full $1,000.00. We disagree with the amount of the judgments entered against the two defendants and remand for entry of judgment against the defendants less the contingent fee paid to Melson's counsel.
 
 
 39
 Melson and the shipowner contend that if they are liable to the insurance carrier at all, it is for the actual settlement less the contingent fee paid to Melson's attorney. They rely upon Swift v. Bolten, 517 F.2d 368 (4th Cir. 1975), and upon Valentino v. Rickners Rhederei, G.m.B.H., 417 F.Supp. 176 (E.D.N.Y.1976), aff'd, 552 F.2d 466 (2nd Cir. 1977).
 
 
 40
 The insurance carrier contends that no reduction of the judgments should be made: (1) as to the shipowner since it expressly undertook to indemnify Melson up to the $1,000.00 it had paid to him; and (2) as to Melson, no deduction should be made since there was no creation of a fund, or of a pecuniary advantage secured through counsel for the longshoreman. The insurance carrier seeks to distinguish Swift v. Bolten, supra, and relies instead upon Cella v. Partenreederei Ms Ravenna, 529 F.2d 15 (1st Cir. 1975), cert. denied, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976).
 
 
 41
 We hold that the insurance carrier may recover the settlement proceeds paid by the shipowner to Melson in satisfaction of its compensation lien but the judgments against the defendants are to be reduced by the amount of the contingent attorney's fee paid to Melson's counsel. Overall, we believe the better rule is set forth in Valentino, and our holding in Swift, supra, rather than in Cella, supra.
 
 
 42
 It is clear that a benefit, albeit small, was conferred upon the insurance carrier by Melson's recovery of the $1,000.00 from the shipowner entitling Melson's counsel to his attorney's fee. This follows because, since the changes wrought by the 1972 Amendments to the Act, the interests of the longshoreman and the stevedore are one and the same. The greater the recovery is from the shipowner, then the greater is the chance that the lien will be satisfied. An attorney's fee is therefore proper. Swift v. Bolten, 517 F.2d at 370; Valentino, supra, 417 F.Supp. at 180-1 and 552 F.2d at 470.
 
 
 43
 Additionally, by virtue of the settlement itself, a fund or res was created from which counsel for Melson could reasonably expect payment and to which he would be legally entitled. Valentino, supra, 417 F.Supp. at 180-1.
 
 
 44
 Further, from an equitable viewpoint, Melson's liability under the settlement is thus equated with the benefit he actually received as a result of it $666.66. To hold to the contrary would unfairly saddle the longshoreman with liability for a sum he never received. Such a result would likely create a substantial incentive for a longshoreman not to voluntarily settle a claim against a shipowner unless he was certain that the recovery received would be substantial. This result would gravely impair the sound public policy favoring the contingent fee as a method for those less financially advantaged to vindicate their substantive rights. Valentino, supra, 417 F.Supp. 176, 181; 552 F.2d 466, 469.
 
 
 45
 We do not believe that the indemnity agreement executed between the shipowner and Melson alters this result. The shipowner agreed to indemnify Melson for any claims or suits brought by the insurance carrier against him up to $1,000.00. Since Melson's liability, and secondarily the shipowner's liability, to the insurance carrier is for less than $1,000.00, it is meritless to argue that the judgment at least as to the shipowner, should not be reduced.
 
 
 46
 Since the insurance carrier will receive the sole benefit from Melson's pursuit of his claim against the shipowner, the insurance carrier must bear the entire cost of the contingent legal fee earned by Melson's counsel.
 
 
 47
 While various rulings of the court below are affirmed, and one is reversed, the judgments are vacated and remanded for reentry in favor of the plaintiff against the defendants in the amount of $1,000.00 less the contingent fee paid to Melson's counsel.[12]
 
 
 48
 AFFIRMED IN PART; REVERSED IN PART; JUDGMENTS VACATED AND REMANDED.
 
 
 
 [1]
 See 33 U.S.C. § 930; 20 C.F.R. §§ 702.201 et seq
 
 
 [2]
 Melson was paid $1,092.28 representing temporary total disability payments from October 16, 1974, to December 11, 1974. He also was paid $128.00 for physicians' bills and medical care. Thus, the total received by Melson from the insurance carrier was $1,220.28. On December 12, 1974, Melson returned to work
 
 
 [3]
 33 U.S.C. § 914(a), and its parallel regulation, 20 C.F.R. § 702.231, require that compensation under the Act be paid periodically, promptly and directly to the injured party "without an award" except where the liability to pay is controverted by the employer (stevedoring co.)
 Here, the stevedoring co. did not controvert payment of benefits by its insurance carrier to Melson. Accordingly, the other procedures, both statutory and regulatory, for the resolution of disputed claims, did not come into play here. 33 U.S.C. §§ 914(d), (h); 33 U.S.C. § 919; 20 C.F.R. §§ 702.212-702.394; 33 U.S.C. § 921.
 
 
 [4]
 His claim for negligence was based on 33 U.S.C. § 905(b), as amended in 1972
 
 
 [5]
 In its memorandum opinion, the district court did make reference to a suit being filed. This minor error does not affect the outcome of this case or the rules of law we establish
 
 
 [6]
 The record does not disclose whether the $333.33 was inclusive or exclusive of expenses. Presumably, this was a 1/3 contingent fee arrangement. There was no dispute in this case about the reasonableness of the attorney's fee
 
 
 [7]
 Under 33 U.S.C. § 933(b), acceptance of a compensation award constitutes an assignment by the injured employee to his employer to pursue his damage claim against third parties. The employer is specifically empowered to file suit. 33 U.S.C. § 933(d). However, if, as here, the employer is insured, and the carrier has assumed payment of compensation to the injured employee, the insurance carrier is subrogated to all rights of the employer, and it can then pursue litigation against third parties. 33 U.S.C. § 933(h)
 
 
 [8]
 The district court noted that a split of authority existed regarding the problem of apportionment of damages relative to the degree of fault assessed against the shipowner and the stevedoring co. This court, in a case decided after the district court ruled, split on this issue also. Edmonds v. Compagnie Generale Transatlantique, 558 F.2d 186 (4th Cir. 1977), rehearing en banc granted June 3, 1977. The ultimate verdict in this case dispenses with the need to consider this issue further in this case
 
 
 [9]
 33 U.S.C. § 933(b) provides:
 Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.
 33 U.S.C. § 933(d) provides:
 Such employer on account of such assignment may either institute proceedings for the recovery of such damages or may compromise with such third person either without or after instituting such proceeding.
 33 U.S.C. § 933(h) provides:
 Where the employer is insured and the insurance carrier has assumed the payment of the compensation, the insurance carrier shall be subrogated to all the rights of the employer under this section.
 
 
 [10]
 The documents are:
 a) Form BEC-202 Employer's First Report of Accident or Occupational Illness; and
 b) Form BEC-206 Payment of Compensation Without Award; and
 c) Form No. 6 Attending Physician's Report; and
 d) Form BEC-208 Compensation Payment Stopped or Suspended.
 
 
 [11]
 In view of the above holding, we deem it unnecessary to discuss the remaining contentions of the insurance carrier regarding the need for an "award" under 33 U.S.C. § 933(b)
 
 
 [12]
 The notice of appeal filed by the insurance carrier is broad enough to encompass an appeal by the carrier from the finding of no liability by Judge Kellam following the trial to the court on the negligence claim for $220.28. While this point was neither briefed nor argued on appeal by the insurance carrier, our review of the record before us would indicate that we would not be inclined to disturb Judge Kellam's finding of "no liability" as to the shipowner