George L. **DUNBAR**

v.

**RETLA STEAMSHIP COMPANY.**

Civ. A. No. 79–258.

United States District Court,
E. D. Pennsylvania.

Feb. 26, 1980.

James Gardner Colins, Philadelphia, Pa., for plaintiff.

Robert G. Kelly, Jr., Thomas S. Seus, Philadelphia, Pa., for defendant.

## MEMORANDUM

POLLAK, District Judge.

This longshoreman's action for personal injuries was commenced on January 19, 1979. The action arises from an accident alleged to have occurred on June 23, 1977, when plaintiff Dunbar was unloading plywood in Galveston, Texas, on the "Union Progress," a vessel then under charter to defendant Retla Steamship Company. At the time of the accident, Dunbar was employed by St. Johns Shipping Company; and, shortly thereafter, plaintiff began receiving compensation benefits from his employer's insurance carrier. These payments continued, although episodically, until terminated in February 1979. Meanwhile, on June 1, 1978, plaintiff filed a claim for compensation with the Labor Department. On April 5, 1979, an informal conference was held before a claims examiner of the Office of Workers' Compensation Programs of the United States Department of Labor in Philadelphia. That meeting resulted in a proposed settlement and stipulation between plaintiff and the insurance carrier, which was finalized in a "Compensation Order of Compensation Settlement Under Section 8(i)(A)" on June 16, 1979.

### I.

Defendant Retla, the charterer, has moved for summary judgment. The predicate of the motion is Section 33(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 933(b):

> Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.

This action was commenced in January, 1979. The award was entered nearly five months later, in June, 1979. Thus, under the clear language of the section, which begins the six-month period at the time of "an award in a compensation order," section 33(b) would appear to pose no obstacle to Dunbar's claim. Retla argues, however, that the limitation period began to run during or prior to the summer of 1978, more than six months before this action was filed and eleven months or more before the entry of the award. Wherefore, Retla insists, the claim has been assigned to Dunbar's employer and this action is barred.[1]

To support its argument, Retla relies on the decision of the Court of Appeals for the Fourth Circuit in *Liberty Mutual Insurance Co. v. Ameta & Co.*, 564 F.2d 1097 (4th Cir. 1977) and on subsequent district court decisions in that Circuit. In *Liberty*, the Court of Appeals considered the defense of a shipowner to the claim of the stevedoring company-employer's subrogee. The shipowner argued that in the absence of an award there had been no assignment, and therefore no subrogation. The Court of Appeals held that there had been a statutory assignment even though there had been no formal action by the deputy commissioner. Building on language in *Grasso v. Lorentzen*, 56 F.Supp. 51, 54 (S.D.N.Y.1944), *aff'd* 149 F.2d 127 (2d Cir. 1945), *cert. denied* 326 U.S. 743, 66 S.Ct. 57, 90 L.Ed. 444, which had emphasized the necessity for "an affirmative act or determination by the deputy

commissioner," the Court of Appeals in *Liberty* directed that "the focus should properly be upon some act of ratification of compensation, whether formal or informal, and the subsequent acceptance of compensation by the claimant." 564 F.2d at 1102. And the necessary ratification was found in the deputy commissioner's receipt, filing and acceptance of "numerous documents."[2] This gloss on the statute made good sense, so the Fourth Circuit felt, because, by reducing the employer's incentive to controvert every claim so as to ensure the entry of a formal award, it would obviate the delay and expense of an extended administrative process whose result was fore-ordained.

At issue in *Liberty* was whether an action brought by the employer's subrogee could be maintained. The court determined that there had been a statutory assignment and therefore the action could proceed. In *Bandy v. Bank Line Ltd.*, 442 F.Supp. 882 (E.D. Va.1977), the *Liberty* analysis was found applicable to forestall a longshoreman's action brought six months after the termination of the statutorily required compensation payments.[3] The same court, in *Larsen v. Associated Container Transp. (Australia)*, 459 F.Supp. 561 (1978), determined that "the payment of benefits under the LHWCA with the requisite filing of documents and reports with the U. S. Department of Labor and the acceptance of those benefits by the plaintiff started the six-month period of section 33(b) to run," 459 F.Supp. at 564, and held a longshoreman's

---

1. While Section 33(b) allocates absolute control of potential tort claims against third parties, it has, for the most part, only an indirect effect on the substantive rights of the employer and employee. If the employer is victorious by judgment or compromise against a third party tortfeasor, 33 U.S.C. § 933(e) allows him to be reimbursed for all expenses and compensation payments but provides that 80% of any additional recovery shall be given to the employee. If it is the employee who recovers in tort, the employer may recoup his compensation payments to the employee by a lien on the proceeds of that suit. See *International Terminal Operating Co. v. Waterman S. S. Co.*, 272 F.2d 15 (2d Cir. 1959), *cert. denied*, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739; *The Etna*, 138 F.2d 37 (3d Cir. 1943).

2. The Court of Appeals referred in a footnote (564 F.2d at 1101 n.10) to Form BEC—202—Employer's First Report of Accident or Occupational Illness; Form BEC—206—Payment of Compensation Without Award; Form No. 6—Attending Physician's Report; BEC—208—Compensation Payment Stopped or Suspended. It appears that each of these documents has been filed in this case.

3. The court, however, denied summary judgment for the defendant pending submission of additional evidence on the plaintiff's claim that a conflict of interest had inspired the inaction of his employer.

action to be barred by a statutory assignment.

■■■ Based on these cases, the defendant would have me hold that Dunbar's initial receipt of benefits more than six months prior to commencement of this action now bars his claim. Although the facts of this case appear to fall within the district court decisions which have followed *Liberty*, I conclude, with all respect, that those decisions depart from the scenario Congress contemplated in enacting Section 33(b).

While an arrangement which would expedite the "award," and resulting assignment, might, in certain circumstances, be beneficial both to employers and to employees, in that it would permit the employer, the party typically having the greater resources, to proceed with the court action without superfluous administrative hurdles, section 33(b) does not in terms specify, and does not by apparent implication suggest, any such procedure. Nor has the Labor Department established such a procedure, apart from the Office of Workers' Compensation Programs' informal settlement mechanism. The Longshoremen's and Harbor Workers' Compensation Act is to be construed liberally; but that prescription is designed to promote the interests of the injured employee. See *Voris v. Eikel*, 346 U.S. 328, 333, 74 S.Ct. 88, 91, 98 L.Ed. 5 (1953). It is common ground that, "[n]arrow statutory construction should not deprive the injured employee of either his compensation or his claim in damages against third parties." *Potomac Electric Power Company v. Wynn*, 120 U.S.App.D.C. 13, 343 F.2d 295, 296

(1965). Liberal construction which yields such disfavored consequences must also be avoided.[4]

■■■ In support of its motion for summary judgment, Retla asserts only that Dunbar has filed a claim with the Office of Workers' Compensation Programs, that his employer has submitted the forms required by law, and that Dunbar has received compensation from his employer commencing on a date more than six months prior to bringing this lawsuit. It is well settled, however, that "mere acceptance of compensation payments does not preclude an injured employee from thereafter electing to sue a third party tortfeasor." *American Stevedores v. Porello*, 330 U.S. 446, 456, 67 S.Ct. 847, 853, 91 L.Ed. 1011 (1947). Apart from the filing of the claim itself, plaintiff has undertaken no action which might properly be construed as an election permanently to surrender his tort claim. Indeed there has been no substantial involvement by this plaintiff with the Office of Workers' Compensation Programs which might have alerted him to the fact that acceptance of compensation from his employer might later be viewed as a forfeiture of his rights against third parties. To allow an assignment of a claimant's entitlement to sue to be triggered by the mere acceptance of benefits and the passage of time, at a point when the claimant is most in need of those benefits, would increase the likelihood that the assignment will be unwitting and unwilling, for both employer and employee—a result at odds with the purpose of the Act generally and this section in particular.[5]

4. A rigid adherence to the requirement of a formal award would serve no purpose where, for example, the parties, in conjunction with the Office of Workers' Compensation Programs, have reached an enforceable settlement of the compensation claim, but have failed only to see their settlement memorialized in a formal order. See *Rodriguez v. Compass Shipping Co. Ltd.*, 456 F.Supp. 1014 (S.D.N.Y.1978) (Carter, J.). But the general ·abandonment of the formal award requirement is an innovation better left to the judgment of Congress or the administrative agency charged with enforcing the compensation program.

To be sure, where no award has been entered, and the employee chooses not to seek

recovery from third parties, no direct action will be immediately available to the employer. If the employer is disturbed by the hesitance of its injured employee to initiate suit against the charterer or the shipowner, it may, by pressing for a formal award, force the employee to commence such an action or forfeit control of the litigation. Once there has been an assignment to the employer, however, the employee may be irretrievably denied a tort recovery by the inaction of a reluctant assignee. See, fn. 5 infra.

5. Section 33(b) was apparently designed to place control of the tort claim against third parties in the hands of the party most likely to

## II.

In the alternative, defendant, the time charterer of the vessel, has moved that this case be transferred to the United States District Court for the Southern District of Texas, Galveston Division, pursuant to 28 U.S.C. § 1404.

In Civil Action No. 79–94, a case in which Dunbar is suing International Union Lines, as the vessel's owner, for the injuries which have given rise to the instant suit, I entered an order, and explanatory opinion, denying the motion of International Union Lines to transfer that case to the Southern District of Texas. *Dunbar v. International Union Lines, Ltd.*, (E.D.Pa.1979). As I stated in that opinion, the possibly greater availability of witnesses points somewhat toward transferring this case to Galveston. However, Dunbar's averment—there uncontradicted by International Union Lines and here uncontradicted by Retla—that he would be unable to afford the expense of prosecuting the case in Galveston, "weighs heavily in favor of retaining the case in this district." And here, as there, the defendant has asserted no special ties to the Southern District of Texas.

 In my opinion in Dunbar's suit against International Union Lines, I placed some reliance on the economy of conducting these two related cases in a single forum. Having denied the earlier transfer motion, I now reaffirm that the single forum should

and shall be the Eastern District of Pennsylvania. Wherefore, an order will enter denying defendant's motion for summary judgment and denying defendant's alternative motion to transfer this action to the Southern District of Texas.[6]

be willing, and able, to prosecute such an action. Cf. *Czaplicki v. The S. S. Hoegh Sivercloud*, 351 U.S. 525, 531, 76 S.Ct. 946, 950, 100 L.Ed. 1387 (1956). However, the problem of employers who, after becoming assigned to the cause of action, have not been inclined to pursue their claim, but have chosen "to stand pouting in a corner like a sulky milkmaid at a barn dance and simply refuse to bring suit without adequate reason," *Johnson v. Sword Line*, 240 F.2d 954, 956 (3d Cir. 1957), has been a recurring one. Conflicts of interest between the employer (or his subrogee) and the injured longshoreman, sourced in the frequent mutuality of interests between stevedoring companies, and their insurers, and shipowners, and their insurers, have given rise to a judicially established exception to the assignment provision. See, *Czaplicki v. The Hoegh Sivercloud, supra*; *Johnson v. Sword Line*, 257 F.2d 541 (3d Cir. 1958) (failure of the employer to bring suit

constitutes a *prima facie* showing of conflict of interest); *Potomac Electric Power Co. v. Wynn*, 120 U.S.App.D.C. 13, 343 F.2d 295 (1965) (allowing the employee to bring suit whenever it is clear that the employer, for whatever reason, will not). Although the injured longshoreman, upon a sufficient showing of conflict of interest, may have his cause of action restored to him, the possibility and frequency of such conflicts caution against undue acceleration of these statutory assignments.

6. On January 15, 1980, Dunbar moved to withdraw his suit against International Union Lines from arbitration, and to consolidate it with this action for trial. Since the earlier case was never listed for arbitration, that aspect of Dunbar's motion will be denied as moot. His motion to consolidate will be granted.