### ROMANO v. UNITED STATES et al.

United States District Court
S. D. New York.
April 25, 1950.

Philip F. DiCostanzo, Brooklyn, N. Y., Jacob Rassner, New York City, of counsel, for libelant.

Irving H. Saypol, U. S. Atty. for Southern Dist. of N. Y., New York City, for respondent United States.

Corydon B. Dunham, New York City, for respondent A. L. Burbank & Co., Limited, C. B. Dunham, New York City, X. N. Sardaro, and J. J. O'Brien, New York City, of counsel.

John P. Smith, New York City, Albert Commette, New York City, of counsel, for respondent-impleaded.

S. H. KAUFMAN, District Judge.

Libelant, a longshoreman employed by Nessa Corporation, brings this suit against the United States of America and A. L. Burbank & Co. Ltd. to recover damages for injuries sustained by him on January 27, 1945 while working on board the S. S. Willie Jones. Respondents, claiming a right to indemnity, impleaded Nessa Corporation.

On the day of the accident, Nessa Corporation was loading general cargo from the dock into the hold of the S. S. Willie Jones. Libelant was employed as a gangwayman and, as such, was charged with signaling the operators of the winches, which hauled the cargo from the dock into the hold.

Just prior to the accident, which occurred between 9:30 and 10:00 a. m. on January 27, 1950, a draft had been unloaded in the hold of No. 3 hatch, and the skid on which the load had been carried had been lifted out of the hold for the purpose of getting it back to the dock, so that it could be reloaded.

After the draft had come clear of the hatch, and was about to be taken from the up and down winch on to the Burton winch, the skid fell, hit the deck, and in its flight came in contact with libelant and threw him to the deck. As a result, he sustained injuries on the right side of his back and the right side of his head, and a laceration on the right side of the bridge of his nose.

■ At the outset of the trial, respondent, the United States, urged that the suit could not be maintained since libelant had received and accepted compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. The evidence showed that libelant did file a claim for compensation under the Act and that pursuant thereto his medical expenses were paid and he received and accepted approximately $102, representing loss of wages. In addition, as a result of a conference with a claims examiner of the Commission and a memorandum by him, libelant also received and accepted some $200 as compensation for the scar which resulted from the laceration on the bridge of his nose. It is clear from the evidence, however, that the compensation was not accepted "under an award in a compensation order filed by the deputy commissioner". Therefore, the contention of respondent, the United States, must be overruled. American Stevedores v. Porello, 330 U.S. 446, 454–456, 67 S.Ct. 847, 91 L.Ed. 1011; Grasso v. Lorentzen, D.C., 56 F.Supp. 51, affirmed, 2 Cir., 149 F.2d 127, certiorari denied 326 U.S. 743, 66 S.Ct. 57, 90 L.Ed. 444; 33 U.S.C.A. § 933(b).

At the trial, libelant sought to prove that the United States, the owner of the vessel, negligently failed to furnish libelant with a safe place to work, in that the accident was due to a failure of steam pressure in the lines leading to the winches, thereby causing the skid to fall.

In support of its contention as to liability, libelant called three witnesses: Charles Di Somma, Catiello Cherco and Joe Balarda.

Di Somma testified that he was the hatch boss on No. 4 hatch on the day of the accident. He did not see the accident, but was one of the persons who picked libelant off the deck after the accident had occurred. He stated that the winches were not receiving enough steam and that he had so informed an officer of the ship and the head foreman. This witness also stated that he knew nothing about the operation of winches; that he talked to no one about the case since 1945; and that the men from Nessa Corporation had been working on the ship for only two or three days before the accident.

On the whole the testimony of this witness was most unsatisfactory. He was in-

definite with respect to all matters except (1) that there was a failure of steam in the winches, and (2) that he had complained of the failure to the head foreman and to some officer of the ship.

His testimony was such that no finding could properly be based thereon.

Joseph Balarda was the head foreman of the men from Nessa Corporation on the day of the accident. His testimony was so colored as to be unworthy of belief. It does not warrant any analysis.

Cherco was the winchman operating the Burton winch at the No. 3 hatch. He testified that the draft in question consisted only of the skid; that after it had cleared the hold and was about to be taken over by the Burton winch for the purpose of carrying it over the side of the ship and on to the dock, the draft fell, hitting the deck of the ship, and as it bounced, part of the skid struck libelant. Cherco also testified that the fall of the draft was due to the failure of steam "without notice"; that he called to libelant to "watch"; and that in an effort to stop the fall of the draft, he put his foot on the brake as the skid hit or was a short distance from the deck. This witness also stated that four or five minutes after the accident, the same winches were used to take libelant from the deck of the vessel to the dock, and that the men continued to work the winches after the accident. He also stated that there had been previous failures of steam every once in a while and that he had informed libelant of that fact.

Officers and engineers of the S. S. Willie Jones were called by respondent as witnesses. They testified that a steam pressure of between 165 and 170 pounds was maintained in the boilers on the day of the accident; that the steam from the boilers went through a reducing valve, reducing the pressure to the pipes leading to the deck machinery to 125 pounds; and that that pressure was sufficient to operate all the winches. Records as to the consumption of oil were also produced, from which it was sought to show that while the ship was in port such consumption was sufficient to maintain the proper steam pressure on the deck machinery as well as to take care of the other needs of the vessel. The chief mate, second mate, third mate, and the deck engineer of the vessel, as well as the pier supervisor of Nessa Corporation, all testified that no complaints were made to them of insufficiency of steam pressure on the day of the accident.

Roy Bredenkoetter, the deck engineer, testified that it was his job to examine and keep the deck machinery in proper repair; that on the day of the accident, as on all other days, he went to work at 8:00 a. m. and started to oil the winch machinery at No. 1 hatch; that that operation took about ten minutes and he then proceeded to each of the succeeding winches on the vessel. He testified further that he reached the winches at No. 3 hatch between 8:20 and 8:30 a. m. and remade his rounds each hour during the day; that he made his second trip to hatch No. 3 at about 9:20 or 9:30 a. m.; that the proper steam pressure was maintained at all times and that at no time during that day was the winch machinery in disrepair.

A consideration of all the evidence leads to the conclusion that there was in fact no failure of steam pressure and that the winches and winch machinery were at all times here involved in good condition. The conclusion of Cherco that the falling of the draft resulted from the failure of steam pressure is not warranted by the evidence in this case; the inference from the evidence is, rather, that the falling of the skid resulted from the failure of libelant's fellow servants to operate the winches properly. The burden of establishing unseaworthiness is on libellant, Grillo v. United States, 2 Cir., 177 F.2d 904, 905, and that burden he has failed to sustain.

In addition, it is undisputed that respondent A. L. Burbank & Co. Ltd. was merely an agent of the United States under the standard form of General Agency Service Agreement. The libel against that respondent must be dismissed in any event. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317.

It follows that the claim for indemnity, asserted by respondents in their im-

pleading petition against Nessa Corporation, must also be dismissed.

The foregoing findings and conclusions are dispositive of this case. It is therefore unnecessary to discuss the question whether or not the illness that overtook libelant on August 18, 1947, nearly eight months after the happening of the accident, was the proximate result of the accident.

Findings of fact and conclusions of law are made herewith.

#### Findings of Fact.

1. At all times herein material, respondent, United States of America, was the owner of the S. S. Willie Jones, and respondent, A. L. Burbank & Co. Ltd., was an agent of the United States under the standard form of General Agency Service Agreement.

2. Libelant, an employee of Nessa Corporation, was injured on January 27, 1945 while working as a gangwayman on board the S. S. Willie Jones. The accident occurred when a draft consisting of a skid dropped as it was being taken from the hold of No. 3 hatch to the dock, and the skid came in contact with libelant. Libelant sustained injuries to the right side of his back, the right side of his head and a laceration on the right side of the bridge of his nose.

3. The falling of the draft was not caused by a failure of steam pressure, but, rather, from the failure of libelant's fellow servants to operate the winches properly.

4. Libelant received certain sums representing medical expenses and wages lost and compensation for a scar, after having filed a claim pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., but said sums were not received by libelant under an award in a compensation order filed by the deputy commissioner.

#### Conclusions of Law.

1. This court has jurisdiction of the parties and the subject matter of this action.

2. This suit is not barred by reason of libelant's receipt and acceptance of the moneys referred to in Finding of Fact 4.

3. Libelant has failed to sustain the burden of proving that respondents were responsible for the injuries sustained by libelant on January 27, 1945 by reason of the unseaworthiness of the S. S. Willie Jones or the negligence of her master, officers or crew members, or by reason of respondents' failure to furnish libelant with a safe place in which to work.

4. Respondents are entitled to a decree dismissing the libel.

5. Respondent-impleaded is entitled to a decree dismissing the impleading petition for indemnity.

6. Respondent A. L. Burbank & Co. Ltd. is entitled to a decree dismissing the libel on the additional ground that it is not responsible for the acts alleged.