Michael SABOL, Libellant-Appellant,

v.

MERRITT CHAPMAN & SCOTT COR-PORATION, Respondent-Appellee.

No. 213, Docket 24048.

United States Court of Appeals
Second Circuit.

Argued Feb. 7, 1957.

Decided March 8, 1957.

Paul C. Matthews, New York City (Paul C. Matthews, Jr., and John J. Robinson, New York City, on the brief), for libellant-appellant.

Galli & Locker, New York City (Ralph H. Terhune and Patrick E. Gibbons, New York City, of counsel), for respondent-appellee.

Before CLARK, Chief Judge, MEDINA, Circuit Judge, and SMITH, District Judge.

MEDINA, Circuit Judge.

On June 7, 1954, while appellant Michael Sabol was engaged in unloading a cargo of beach grass from a scow tied up at an island off Broad Channel in Jamaica Bay, New York, he stepped into a hole in the deck and fell, thereby sustaining personal injuries. This action was brought in admiralty to recover damages from the owner of the scow, appellee Merritt-Chapman and Scott Corp. As a complete defense to the action, Merritt-Chapman pleaded that Sabol was no longer the owner of the cause of action since he had accepted payments under a compensation award made under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., which by the provisions of Section 933 [1] operated as an assignment to his employer of his rights to recover damages from third parties.[2] After a trial, Judge Edelstein found that Sabol had accepted compensation under such an award, and accordingly dismissed the libel. 137 F. Supp. 635. We agree.

There is no dispute about the fact that Sabol accepted a payment of $512; the only question is whether this represented "compensation under an award" made under the federal act. What would ordinarily be a simple question has assumed an aspect of difficulty because of the following circumstances.

At the time of his injuries, Sabol was employed by a subcontractor. While both the contractor and the subcontractor carried workmen's compensation insurance, the subcontractor was insured only against claims under the New York State Workmen's Compensation Law, McKinney's Consol.Laws, c. 67, and was not covered for claims under the federal statute. As a result, the contractor would be liable if the federal act were applicable, because of the specific provisions of Section 904,[3] but, it seems to be agreed, the contractor would not be liable if the state rather than the federal act were applicable. Because of disagreement over the applicability of the federal statute, both the contractor's insurer and the subcontractor's insurer refused to pay compensation to Sabol, each claiming the other was liable.

Not having received any compensation payments and being in urgent need of funds, Sabol submitted a claim for compensation under the federal act, giving notice of claim to the Deputy Commissioner. The contractor's insurer, hereafter called State Fund, controverted the claim, thus causing a formal hearing to be had before the Deputy Commissioner. On November 18, 1954, that official handed down an order finding the federal act applicable and directing State Fund to pay Sabol $565, representing 16½ weeks of temporary total disability at $35 a week. State Fund, continuing to assert the inapplicability of the federal act, refused to make any payments and com-

---

1. "§ 933. Compensation for injuries where third persons are liable. (a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the Secretary may provide, to receive such compensation or to recover damages against such third person.

"(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person."

2. This provision has been criticized. See, e. g., Note, Claims Arising from Compensable Injuries to Longshoremen and Harbor Workers: A Tangled Triad of Remedies, 66 Yale L.J. 580, 590.

3. "§ 904. Liability for compensation. (a) Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this chapter. In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment.

"(b) Compensation shall be payable irrespective of fault as a cause for the injury."

menced an action in the United States District Court for the Eastern District of New York to have the award set aside. As of the time of filing this opinion, that action, as far as we are aware, has not yet proceeded to judgment.

Meanwhile, Sabol had not yet received any payments of compensation. Apprised of State Fund's continued refusal to pay, the Deputy Commissioner communicated with State Fund and requested that because of Sabol's financial straits, and because one or the other of the insurers must ultimately be held liable, one of them should pay the award. As a result, the insurers entered into this agreement: upon receipt of an undertaking by the subcontractor's insurer, State Fund would pay the award and it would be reimbursed by the subcontractor's insurer if the federal act were ultimately held inapplicable. Pursuant to this agreement, State Fund paid Sabol the sum of $512 on December 28, 1954. Evidently, it paid this amount rather than the $565 called for by the award because under the New York act the subcontractor's liability would be only $32 a week for 16 weeks.

■ Previously, Sabol's proctor had written to State Fund, requesting "that if the payment under this award is to be made it be made on a voluntary basis, not under the award, so that his rights [against Merritt-Chapman] may be preserved." It does not appear that any reply to this request was received. Appellant sought to introduce this letter into evidence to show his "state of mind" in receiving the $512, but the District Court excluded it. We think this was proper, since neither appellant's "state of mind" nor his attorney's characterization is determinative of whether the payment was made as "compensation under an award." If the payment was intended by State Fund to be "compensation under an award," and this was known to Sabol when he accepted the payment, he accepted it as "compensation under an award" regardless of any mental reservations he may have had. Payments may not be "compensation under an award" *quoad* the employer and something else *quoad* the employee. Such a rule would leave third parties subject to suit by both the employer and the employee, the very situation the Congress was attempting to prevent by the assignment section of the statute. Whether payments are "compensation under an award" must be determined from the realities of the situation rather than by the labels employed.

In the case at bar, there can be no doubt that State Fund intended the payment to be made under the award if the award was valid. That it obtained a conditional reimbursement agreement and paid only the amount it expected would be reimbursed if the award was improper cannot alter this conclusion. It is not pretended that State Fund was making Sabol a gift or loan, and its only liability was under the award.

■ It is true that State Fund's senior attorney testified that "these payments were not made under the award but were made voluntarily," but he also testified that "we paid $512 in part payment of the award." Moreover, State Fund filed with the Deputy Commissioner form US–208, in use in the administration of the federal act, reporting the payment of $512 pursuant to the award. In the light of State Fund's then pending suit to set aside the award on the ground that the Deputy Commissioner was without jurisdiction to make it, it becomes plain that the statement by State Fund's attorney that "these payments were not made under the award but were made voluntarily" was prompted by the fear that a statement that the payments had been made under the award would be construed as a concession that the award had been properly made. We have no doubt that State Fund intended that the $512 should be credited against its liability under the award if it should be determined that the federal act was applicable. Under these circumstances, we cannot do otherwise than conclude that State Fund did make the payment in partial satisfaction of the award, even

though it was then actively contesting its validity.[4]

Appellant further contends that the payment could not have been made under the award since State Fund was not at that time under legal compulsion to make such payments, inasmuch as the commencement of the action in the Eastern District had suspended the award's operation. But there is nothing in this. Section 921(b) specifically provides that unless the employer has obtained an injunction, "payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding."

The holding in Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387, was carefully limited by the court to the peculiar situation there presented. That case has no application here.

Affirmed.

---

4. The testimony of State Fund's attorney included the following:

"Q. Was compensation paid to the plaintiff? A. Yes, sir.

"Q. Did you file with the Federal Compensation Bureau their form US–208 indicating the payment of compensation pursuant to the award? A. Yes, sir. (R. pp. 32–3)

"A. * * * The carrier against whom our appeal or action is pending in the Federal Court has given us an agreement that if we should pay the award or part thereof he would reimburse us in the event we were successful in our action. And as a result of that agreement we paid $512 in part payment of the award. (R. p. 38)

"The Court. What did these payments represent, if you know?

"The Witness: The payments that were made to the claimant? It represented the amount which is given by the award, but instead of the $35 rate which the award stated, that we pay him $32, and as I stated before the reason we paid him is that we have the U. S. Casualty agreement that they will reimburse us in the event we are successful in our lawsuit. (R. p. 39)

"A. The first and only payment of compensation that was made by the State Insurance Fund was made on December 28, 1954. (R. p. 41)

"Q. Mr. Herzog, isn't one of the issues in this appeal whether or not the case is properly a Federal case? A. That is correct.

"Q. And you deny, or the State Fund denies jurisdiction of the Federal Employees Compensation Commission, is that correct? A. That is correct.

"Q. And under the Federal Act, the maximum allowance is $35, is that correct? A. That is correct.

"Q. And under the State Act, the maximum allowance is $32? A. Maximum allowance was $32 at the time this accident took place.

"Q. Was that your reason for making the payment at the rate of $32? A. I cannot exactly give you a reason, because that payment was made by a clerk in the Claims Department. But there was a notation in the file as to the payment he made.

*     *     *     *     *

"Q. In any event, you don't look to the injured man for the repayment of compensation, do you? A. Only unless he wins this lawsuit." (R. pp. 43–4)