The CITY OF NEW YORK, Libelant-Appellee,

v.

McALLISTER BROTHERS, INC., Respondent-Appellant.

No. 192, Docket 26983.

United States Court of Appeals Second Circuit.

Argued Jan. 10, 1962.

Decided Jan. 30, 1962.

See, also, D.C., 24 F.R.D. 316.

Christopher E. Heckman, New York City (Foley & Martin), New York City, for respondent-appellant.

Fred Iscol, New York City (Leo A. Larkin, Corporation Counsel of City of New York, Seymour B. Quel, New York City, of counsel), for libelant-appellee.

Before LUMBARD, Chief Judge, and CLARK and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

On a fair, calm night, with the tide 2'4" below mean high water, respondent's tug, the Dorothy McAllister, towed the

United States Navy Derrick Y.D. 209 into the span of the unoffending Brooklyn Bridge. The City of New York having brought a libel for the resulting damage in the Southern District of New York, 46 U.S.C.A. § 740, Judge Murphy, after a brief trial, held the City entitled to a decree. From this respondent appeals, 28 U.S.C. § 1292(a) (3). We affirm.

On the fateful evening, an ensign at the Brooklyn Navy Yard telephoned Carroll Towing Company to dispatch two tugs immediately to tow the Y.D. 209 to the Navy Yard from her position alongside an aircraft carrier in Gravesend Bay, —a voyage necessitating passage under the Brooklyn Bridge. Carroll, not having its own tugs available, transferred the commission to respondent, with the ensign's approval, as it had sometimes done in the past. Respondent sent the Dorothy McAllister to perform the towage and the A. J. McAllister to help. Arriving at Gravesend Bay, the captain of the Dorothy saw the Y.D. 209, which he knew had successfully made the passage under the Brooklyn Bridge on other occasions, with her boom at an undetermined angle and no one on board. He told the captain of a Navy tug lying alongside that the McAllister tugs had orders to tow the derrick to the Navy Yard; this elicited the response "Wait until I find out whether she is ready or not." Someone went from the Navy tug to the aircraft carrier and returned in about fifteen minutes; the Navy tug captain then announced the derrick was ready to tow. The journey from Gravesend Bay toward the Navy Yard was performed in a fashion concededly unexceptionable—with one exception. The angle of the boom was such that the derrick hit the center span of the Brooklyn Bridge, reaching a height 18′9″ above the bottom.

■ Appellant criticizes Judge Murphy's statement "Tugs and tow, for the purposes of this case are treated as one vessel in motion * * *," as running counter to such decisions as The W. G. Mason, 142 F. 913 (2 Cir. 1905) and Pennsylvania R. Co. v. Eastern Transportation Co., 36 Del. (6 W.W.Harr.) 435, 178 A. 580 (1935). It may, indeed, be doubted whether this frequently used figure of speech contributes to correct decision; Mr. Justice Clifford pointed out some of the necessary distinctions a century ago, Sturgis v. Boyer, 65 U.S. (24 How.) 110, 121–122, 16 L.Ed. 591 (1860), see Gilmore and Black, The Law of Admiralty (1957), p. 425, and we agree there is no universal principle that whenever the tow is liable, the tug also is. However, there likewise can be no universal principle that if the tow is liable, the tug is not. The question is always whether the vessel sought to be charged was negligent.

■ Here there was ample basis for finding that the tug was negligent, even though the "presumption" of negligence allegedly operative if the tug herself had collided with the bridge, Wilmington Ry. Bridge Co. v. Franco-Ottoman Shipping Co., 259 F. 166, 168 (4 Cir. 1919), may not apply. Respondent's argument against a finding of negligence is that the Navy represented that the Y.D. 209 was fit to pass under the bridge and that the tug, knowing of previous uneventful transits, was justified in relying on this without more. We do not consider that either the initial order from the Navy ensign or the response of the Navy tug captain warranted the fitness of the Y.D. 209 to pass under the bridge; we construe both as saying merely that she had no more work to do at Gravesend Bay. At the very least such an interpretation is a possible one, and we are thus not required to decide whether respondent would have been entitled to rely on an unambiguous statement from the owner of the tow that the boom had been adjusted to an angle permitting clearance of the bridge, as was held in The William J. Dailey, 263 F. 78 (2 Cir. 1920), although here the excess height of the derrick was great and there it was small. It is not conclusive in respondent's favor that it and other tug owners may have conducted themselves in the past exactly as respondent did here. "What usually is done may be evidence of what ought to be done, but what ought to be done is

fixed by a standard of reasonable prudence, whether it usually is complied with or not," Mr. Justice Holmes in Texas & Pacific Ry. Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905 (1903). The judge was warranted in concluding that reasonable prudence required a tug, about to tow an unmanned derrick under a known obstacle, to do more to prevent collision than respondent did here.

Affirmed.