Federico **RODRIGUEZ**, Plaintiff,

v.

**COMPASS SHIPPING COMPANY LTD. and D. Jakarta Lloyd P. N., Defendants.**

**No. 77 Civ. 3378 (RLC).**

United States District Court, S. D. New York.

Sept. 12, 1978.

Zimmerman & Zimmerman, New York City, for plaintiff; Edward D. Lory, New York City, of counsel.

Walker & Corsa, New York City, for defendants; Joseph T. Stearns, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff is a longshoreman. On September 4, 1973, as an employee of the stevedoring company International Terminal Operating Co., Inc. ("International"), plaintiff was working in Hatch No. 2 on the S.S. South Breeze, docked in Brooklyn, New York, unloading a shipment of coffee. The S.S. South Breeze was then owned by defendant Compass Shipping Company ("Compass") and was being operated under a bareboat charter by defendant D. Jakarta Lloyd ("Jakarta"). According to the plaintiff, he injured himself when, in the course of leaving work for the day, he climbed up the ladder from Hatch No. 2 and, upon reaching the deck of the ship, put his foot into a hole above the ladder which descended into the adjacent Hatch No. 3.

In the present action, Compass moves to dismiss the action against it on the ground that an earlier suit between plaintiff and

Compass concerning the same events was dismissed by Judge Bonsal of this court. In addition, both Compass and Jakarta move for dismissal on the ground that, under the facts of this case, plaintiff's claim for relief against the defendants was assigned to his employer, International, by virtue of the provisions of 33 U.S.C. § 933(b). Lastly, both defendants move for summary judgment under F.R.Civ.P. 56. For the reasons set forth below, the motion based on Judge Bonsal's order of dismissal is denied, determination of the motion based on 33 U.S.C. § 933(b) will await the completion of the discovery specified in this opinion, and the motion for summary judgment is denied.

### Judge Bonsal's Order of Dismissal

On June 2, 1976, plaintiff filed a suit in this district concerning the alleged accident of September 4, 1973, and the action was assigned to Judge Bonsal. Only Compass, the shipowner, was named as a defendant. A pre-trial conference was held before the Judge on February 28, 1977, at which time Compass revealed to the court and plaintiff that when the events in question allegedly occurred, the S.S. South Breeze was under the exclusive control of Jakarta, who had chartered the vessel. Compass argued that under these circumstances, it was not a proper party-defendant on the theory that it could not possibly be liable for events which occurred when the vessel was under the dominion of another. According to the defendant, plaintiff agreed that Compass was improperly named as a defendant. In any case, an order of discontinuance was signed at the conference. The order states simply that "it is ORDERED that the above entitled action be and hereby is discontinued without costs to either party," and is dated and signed by Judge Bonsal. Underneath that signature is the statement "I hereby consent to the entry of this proposed order," followed by the signature of the attorneys of both plaintiff and defendant. Handwritten across the bottom is *"30 Day Order.* Extended an additional 30 Days (3/28/77)." The apparent purpose of this order was to permit plaintiff time to confirm defendant's assertion that the vessel

had been chartered to Jakarta, after which the action against Compass was to be discontinued. After the conference, plaintiff apparently reconsidered his position with regard to the scheduled discontinuance, for on March 18, 1977, he moved to have the order of discontinuance vacated and for permission to add Jakarta as a defendant in the pending action. The motion seems to have been denied, for plaintiff does not now contest that his earlier action was dismissed by virtue of the February 28, 1977 order.

■ Without reference to statute, rule, precedent, or explanation, Compass claims that the present action against it is barred by Judge Bonsal's order of discontinuance. In like manner, plaintiff asserts that that order was "without prejudice." For reasons not alluded to in the papers before the court, plaintiff is correct.

Rule 41(a) of the Federal Rules of Civil Procedure provides that unless otherwise indicated in the dismissal, a voluntary dismissal of an action is without prejudice. This is so whether the dismissal is accomplished by plaintiff's filing of a notice of dismissal before an answer or a motion for summary judgment is served (F.R.Civ.P. 41(a)(1)(i)), by stipulation among all parties (F.R.Civ.P. 41(a)(1)(ii)), or by order of the court (F.R.Civ.P. 41(a)(2)). The dismissal of plaintiff's earlier action was voluntary: plaintiff consented to it. The consequent effect of Judge Bonsal's order was that the dismissal it directed was without prejudice. That effect is not altered by the fact that subsequent to the signing of the order plaintiff changed his mind and decided he wished to preserve the action and add a new party-defendant. Because plaintiff consented to the dismissal at the time the order was signed, the automatic effect of the order was that the dismissal was without prejudice, and there is no indication that Judge Bonsal ever determined the merits of Compass' argument concerning its liability to plaintiff. It would be contrary to justice and good sense if the mere fact of plaintiff's later and strategically motivated opposition to dismissal mechanically transformed Judge Bonsal's order into an adjudi-

cation of the merits of plaintiff's claim against Compass. The present action against Compass is not barred by the discontinuance of plaintiff's earlier action.

*Section 933(b)*

Under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50 ("the Act"), a longshoreman who is injured in the course of his employment is entitled to compensation payments from his employer. The liability of the employer for this compensation is to the exclusion of all other liability of the employer, 33 U.S.C. § 905, but the injured longshoreman retains the right to sue any other person who may be responsible for his injuries. 33 U.S.C. § 933(a). Section 933(b) provides, however, that

> "[a]cceptance of such compensation under an award in a compensation order filed by the deputy commissioner or [Benefits Review] Board [§ 921(b)] shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award."

It is defendants' contention that under the terms of this subsection, plaintiff no longer has any claim for relief against them.

Although the record does not present an overly detailed history of plaintiff's compensation claim, it is apparent that following his injury, he made a claim against his employer and that the claim caused some form of dispute requiring the attention of the Office of Workers' Compensation Programs ("OWCP") of the United States Department of Labor, for on November 4, 1974, the adjudication of plaintiff's claim

before that agency was settled. The settlement is embodied in an OWCP form and recites that "[w]e, the undersigned, having attended an informal conference, and having received a copy of the signed agreement, in this case on 11/4/74, agree, by the issuance of a Compensation Order, to the following disposition." The settlement then indicates the specifics of that disposition,[1] and concludes: "The employer-carrier shall make payment promptly following the conference, without regard to the receipt of the formal compensation order, in accordance with Section 702.315(a) of the Regulations," presumably meaning 20 C.F.R. § 702.315(a). The document is signed by the plaintiff, his representative, a representative of the employer and the "claims examiner." The "informal conference" from which the settlement arose is the agency's preferred means of disposing of disputes concerning compensation claims. 20 C.F.R. §§ 702.301, 702.311. Section 702.-315(a), to which the settlement refers, directs in part that

> "[f]ollowing an informal conference at which agreement is reached on all issues, the deputy commissioner shall embody the agreement in a formal compensation order, to be filed and mailed . . . . [W]hen the employer or carrier has agreed to pay, reinstate or increase monetary compensation benefits, . . . such action shall be commenced immediately upon becoming aware of the agreement, and without regard to the receipt of the formal compensation order."

Despite, however, the implicit assumption of the settlement and the explicit command of the regulation, no "formal compensation order" was ever issued.[2]

---

1. The total agreed-upon compensation was $3,610.21, from which was subtracted the sum which had been previously paid and a sum for the "approved fee," leaving a balance due to plaintiff of $2,623.03.

2. At oral argument on the instant motions, a copy of a letter from an Acting Deputy Commissioner of OWCP to the attorneys who represented plaintiff before OWCP, dated May 22, 1978, was submitted to the court. The letter

was in response to an inquiry whether the settlement agreement "constitutes a Formal Order." OWCP's response was that "[r]eview of our file shows . . . that the parties had stipulated to the issues on the claim. The self-insured employer voluntarily made payment of the compensation in accordance with the stipulations. To the present, a Formal Order has not been issued."

■ Plaintiff does not dispute that he received compensation for his injuries from his employer, or that he instituted suit against the defendants more than six months after the settlement agreement or his receipt of the compensation. What is contested is whether the settlement constituted "an award in a compensation order filed by the deputy commissioner . . . ."[3] For, as the statute makes clear, mere acceptance of compensation, absent an "award", does not effect a statutory assignment of the injured party's claim.[4] *E. g., Grasso v. Lorentzen*, 149 F.2d 127, 129 (2d Cir.), *cert. denied*, 326 U.S. 743, 66 S.Ct. 57, 90 L.Ed. 444 (1945); *Tartaglio v. Cunard White Star*, 56 F.Supp. 55 (S.D.N.Y. 1944) and cases cited therein. *See also American Stevedores, Inc. v. Porello*, 330 U.S. 446, 454, 67 S.Ct. 847, 91 L.Ed. 1011 (1946); *Liberty Mutual Insurance Co. v. Ameta & Co.*, 564 F.2d 1097, 1101–02 (4th Cir. 1977).

Plaintiff's initial argument in this regard is that the settlement agreement does not satisfy the statutory requisites of an "award" because it was signed only by a claims examiner, and not by a Deputy Commissioner. This position is not without some support, as several cases have held that a document signed by a claims examiner is not a § 933(b) award. *Grasso v. Lorentzen, supra*, 149 F.2d 127, 129, *aff'g* 56 F.Supp. 51 (S.D.N.Y. 1944); *Roeben v. United States*, 113 F.Supp. 732 (D.N.J. 1953); *Romano v. United States*, 90 F.Supp. 15 (S.D.N.Y. 1950); *Sessa v. Weeks Stevedoring Co.*, 56 F.Supp. 50 (S.D.N.Y. 1943). This literal reading of the statute seems to have been motivated by concern about the harsh consequences for the injured employee of finding that an assignment of his claim has occurred. *See Sessa v. Weeks Stevedoring Co., supra*, 56 F.Supp. 50, 51.

■ However well-meaning the rule adopted by these decisions may be, it is at odds with the way in which administrative agencies perform their functions and the legislative purpose underlying the adoption of the "under an award" requirement in 1938, *see* note 4, *supra*. Accordingly, we refuse to apply such a rule here. By regulation, the deputy commissioner is empowered to delegate his duties with regard to disputed compensation claims, and the delegee of these duties is fully authorized to "perform the duties set forth below assigned to the deputy commissioner," 20 C.F.R. § 702.312. There is no reason to believe that the claims examiner who presided over the informal conference in this

---

**3.** In addition, plaintiff argues that the proper interpretation of § 933(b) is that the injured person may bring suit, notwithstanding the statutory assignment, whenever it is evident that the assignee does not itself intend to bring suit. This contention is discussed in detail below.

Plaintiff also asserts, in passing, that "33 U.S.C. 933(b) was not designed to protect third parties such as the defendants herein from suit." I presume that the argument hinted at here is that third parties do not have standing to assert the assignment of the claim from the injured person to his employer. No authority is cited in support of this proposition, nor has research uncovered any, other than an intimation to that effect contained in *Roeben v. United States*, 113 F.Supp. 732, 735 (D.N.J. 1953). Indeed, several courts have sustained the § 933(b) assignment of claim defense even though it was raised by the non-assignee "third party." *Sabol v. Merritt Chapman & Scott Corp.*, 241 F.2d 765 (2d Cir. 1957); *Currant v. Eastern S.S. Lines, Inc.*, 77 F.Supp. 9 (D.Mass.), *aff'd on opinion below*, 170 F.2d 148 (1st Cir. 1948). *See also DiSomma v. N.V. Koninklyke Nederlandsche Stoomboot*, 188 F.Supp.

292, 294 (S.D.N.Y. 1960) (van Pelt Bryan, J.) (dicta). Moreover, in the numerous other cases in which a non-assignee defendant has asserted the § 933(b) assignment as a defense, there is no indication that the non-assignee lacked standing to assert the assignment. *See, e. g., Czaplicki v. The S.S. Hoegh Silvercloud*, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956); *McClendon v. Charente Steamship Co.*, 348 F.2d 298 (5th Cir. 1965); *Potomac Electric Power Co. v. Wynn*, 120 U.S.App.D.C. 13, 343 F.2d 295 (1965); *Johnson v. Sword Line, Inc.*, 257 F.2d 541 (3d Cir. 1958); *Bandy v. Bank Line Ltd.*, 442 F.Supp. 882 (E.D.Va. 1977). Almost every opinion that has touched upon the assignment question has assumed that standing to assert the assignment was not limited to the assignee. Plaintiff's contention in this regard must be rejected.

**4.** The reverse was true before 1938. Until the statute was amended in that year, the simple acceptance of compensation *did* create an assignment of the claim. *See American Stevedores, Inc. v. Porello*, 330 U.S. 446, 454 n. 18, 67 S.Ct. 847, 91 L.Ed. 1011 (1946).

case was not then the deputy commissioner's delegee. Nor is there reason to believe that this normal principle of administrative law is not operable in the context of a § 933(b) award proceeding. The ordering of compensation by a claims examiner or any other delegee of the deputy commissioner, as well as by a deputy commissioner himself, fully satisfies the purpose of the award requirement, which is solely to insure the injured person an opportunity to consider fully the consequences under § 933(b) of accepting compensation before those consequences are incurred. *See* H.R.Rep.No. 1945, 75th Cong., 3 Sess. (1938), *quoted in Iaria v. Silver Line, Ltd.*, 56 F.Supp. 42, 44 (S.D.N.Y. 1943), and *Cupo v. Isthmian S.S. Co.*, 56 F.Supp. 45, 47 (S.D.N.Y. 1941). No statutory purpose is furthered by requiring the endorsement of an actual deputy commissioner on an award.

■ Plaintiff's second contention is that the settlement agreement is not a § 933(b) compensation order because it is not a "formal order." It is now long settled that a "formal" order is not a necessity; an informal "equivalent" of an order is sufficient. *Toomey v. Waterman S.S. Corp.*, 123 F.2d 718, 721 (2d Cir. 1941). *See Liberty Mutual Insurance Co. v. Ameta & Co., supra*, 564 F.2d 1097, 1101–03;[5] *Grasso v. Lorentzen, supra*, 149 F.2d 127, 129. Moreover, it is manifest that the settlement agreement is a compensation order for all intents and purposes. It is apparent from the agreement itself that the parties were determining the terms of a compensation order, which order, it was anticipated, was to issue shortly thereafter. Upon signing the agreement, it was the duty of the employer to begin making compensation payments *immediately*, and it was the duty of OWCP to memorialize the agreement in a more formal document. While the agency's failure to perform this duty may have consequences for OWCP's internal record-keep-

ing, it clearly was of no significance to the understanding or actions of the parties. There is thus no reason why this technical administrative lapse should be permitted to control the legal significance of the settlement agreement. That agreement fulfills the purpose of the award requirement, and is a compensation order within the meaning of § 933(b).

■ Relying on *Potomac Electric Power Co. v. Wynn*, 120 U.S.App.D.C. 13, 343 F.2d 295 (1965), plaintiff argues that notwithstanding the fact of receipt of compensation under an award, an injured person may still bring an action against the third-party tortfeasor "whenever it is evident that the employer-assignee, for whatever reason, does not intend to bring suit." *Potomac Electric Power Co. v. Wynn, supra*, 120 U.S.App. D.C. at 16, 343 F.2d at 298. Plaintiff contends that by its inaction, the employer-assignee waives "the protection offered by statutory assignment." Affirmation in Opposition, p. 4. Though this position has strong appeal in terms of policy considerations, it must be rejected.

■ By virtue of the assignment which it decrees, § 933(b) places the claim for relief against a third party in the hands of the employer who provides its injured employee with compensation. This device serves two purposes. First, it enables the compensating employer to control directly the potential suit by which the employer may recoup from the alleged third-party tortfeasor the sums expended as compensation payments. Second, it permits the interested party with the greater financial and legal resources to prosecute the claim for the benefit of both the employer and the employee.[6] *Czaplicki v. The S.S. Hoegh Silvercloud*, 351 U.S. 525, 531, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). The assignment device also has a significant drawback: in the apparently frequent case where the employer-assignee does not, in fact, institute an

---

**5.** I should note, however, that I cannot agree with the conclusion of *Liberty Mutual* that the events which occurred in that case constituted a statutory award.

**6.** If the employer's suit is successful, it must, after the deduction of its expenses and compensation payments, pay over to the employee 80% of the remaining recovery from the third party. 33 U.S.C. § 933(e).

action, the injured employee must helplessly watch "his" claim for relief languish, to the benefit of no one but the alleged tortfeasor.

■ It may be argued that the purposes of the § 933(b) assignment could also have been satisfied and this drawback avoided if Congress has eschewed the concept of "assignment." Congress could have, and perhaps should have, directed that after the receipt of compensation under an award, *both* the employee *and* the employer would have the right to prosecute the claim against the third party. In that case, each party would be in a position to protect its own interests, by bringing suit if it so wished, but if it did not, the rights of the other party would not thereby be foreclosed. Indeed, it would not be inconsistent with the purposes of the section to interpret the statute in this manner. But Congress did not choose that route; it directs instead that the claim be assigned from one party to another. And, with one exception, every relevant case that research has revealed has read § 933(b) literally and given the assignment notion its traditional meaning. For example, the Second Circuit has twice upheld the dismissal of complaints by injured employees on the ground that, by virtue of the statutory assignment, the claim was no longer theirs to prosecute. *Sabol v. Merritt Chapman & Scott Corp.*, 241 F.2d 765 (1957); *Toomey v. Waterman S.S. Corp.*, *supra*, 123 F.2d 718. The Supreme Court has given the statute the same reading, describing § 933(b) as "giving the assignee exclusive control over the right of action." *Czaplicki v. The S.S. Hoegh Silvercloud*, *supra*, 351 U.S. at 531, 76 S.Ct. at 950. *See also* H.R.Rep.No. 1945, 75th Cong., 3d Sess. (1938), *supra*, accompanying the 1938 amendments to the Act, discussed in note 4, *supra* (acceptance of compensation "result[s in the] loss of right to bring suit in damages

against the third party"); *DiSomma v. N.V. Koninklyke Nederlandsche Stoomboot*, 188 F.Supp. 292, 294 (S.D.N.Y. 1960) (van Pelt Bryan, J.); *Currant v. Eastern S.S. Lines, Inc.*, 77 F.Supp. 9 (D.Mass.), *aff'd on opinion below*, 170 F.2d 148 (1st Cir. 1948). With the exception of the decision of the Court of Appeals for the District of Columbia Circuit in *Potomac Electric Power Co. v. Wynn*, *supra*, the courts have universally construed § 933(b) to mean that, in the absence of special circumstances discussed below, after the assignment, the employer-assignee alone has the right to bring suit.

Against this array of authority stands *Potomac Electric* which held that the employee may bring a suit whenever it is clear that the employer, for whatever reason, will not. This view has not been adopted by subsequent decisions in other jurisdictions. *See McClendon v. Charente Steamship Co.*, 348 F.2d 298, 303 (5th Cir. 1965); *Bandy v. Bank Line Ltd.*, 442 F.Supp. 882, 886 (E.D.Va. 1977) (*Potomac Electric* rule rejected "as entirely inconsistent with the plain language of 33 U.S.C. § 933(b)"). I must also decline to follow it. The *Potomac Electric* court had two grounds of decision. It pointed out that precluding the injured employee himself from suing when the employer does not wish to proceed on the claim would serve no apparent statutory purpose. As indicated above, I agree, but, as also indicated, the uniform construction that has been given the statute and the rule that Congress apparently intended to adopt requires precisely that result. The court also relied on certain amendments to the Act made in 1959,[7] which, it argued, evidenced a Congressional desire "to facilitate the employee's recovery against the third party." 120 U.S.App.D.C. at 16, 343 F.2d at 298. It would be inconsistent with this purpose, the court argued, to place unpurposeful barriers in the path of the employee who seeks to

7. At that time, the Act was amended to permit the employee to sue the third party even though he has received compensation under an award, as long as suit is instituted within six months of the award. Congress thereby gave the injured employee full opportunity for a limited time to pursue *both* the compensation and law suit remedies. Further, the Act was changed to permit the employer-assignee who *does* bring suit to retain 20% of any recovery from the third party in excess of the employer's expenses and compensation payments. See note 6, *supra*. This latter change was made to provide an incentive to the employer to prosecute the assigned claim with vigor.

vindicate his claim. With all respect, however, I believe that the conclusion drawn by the court is broader than warranted. Whatever other benefits they may have bestowed upon employees, the 1959 amendments did not alter the underlying structure of § 933(b): both before and after 1959, the occurrence of certain events constitutes an "assignment" of the claim from employee to employer. Nor is there any reason to believe that Congress meant, obliquely, to change what had theretofore been thought to be the meaning of that term.

■ Although this court is not free to accept the broad argument of *Potomac Electric*, there is in fact a more limited, but well developed, exception to the rule that the employee cannot sue once his claim has been assigned to the employer. In *Czaplicki v. The S.S. Hoegh Silvercloud, supra,* the Court determined that, notwithstanding the fact of the assignment, the employee can still bring suit if, because of a conflict of interest between the assignee and the employee, the assignee did not press the claim. The conflict in *Czaplicki* was of a particular and infrequent sort: the employer's compensation insurance carrier (which, as subrogee of the employer's rights on the assigned claim, § 933(h), was the proper party to bring suit on those rights, *Czaplicki, supra,* 351 U.S. at 529, 76 S.Ct. 946), was also the liability insurer for one of the third parties subject to suit. As a result, the employee's "rights of action were held by the party most likely to suffer were the rights of action to be successfully enforced," *Czaplicki, supra,* 351 U.S. at 530, 76 S.Ct. at 949; thus, an action by the employer's subrogee would have been, in effect, an action against itself. Under those circumstances, the employee was permitted to sue on the claim that was no longer technically his.

Although the Court in *Czaplicki* appeared to base its decision on the unique facts of that case, the "conflict of interest" exception to § 933(b) it announced was quickly and widely expanded by the lower courts. *E. g., McClendon v. Charente Steamship Co., supra; Johnson v. Sword Line, Inc.,* 257 F.2d 541 (3d Cir. 1958); *Allen v. United States,* 235 F.Supp. 950 (N.D.Cal. 1963), aff'd on other grounds, 338 F.2d 160 (9th Cir. 1964), cert. denied, 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965); *DiSomma v. N.V. Koninklyke Nederlandsche Stoomboot, supra.*[8] This expansion was primarily based upon the realization that the doctrine of *Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), created an inherent conflict of interest in many situations in which the employer was a stevedoring company and the third party subject to suit was the owner of the vessel upon which the injury occurred. In *Ryan,* the Court determined that

"a vessel owner found liable to a longshoreman injured as a result of the unseaworthy condition of the vessel was entitled to recover damages, when appropriate, from the stevedore under a theory that by a breach of the warranty of workmanlike service the stevedore or its employees caused or contributed to cause the condition on the vessel which gave rise to the longshoreman's recovery."

*Bandy v. Bank Line Ltd., supra,* 442 F.Supp. at 884. The practical effect of this doctrine was that "the assignee employer [was put] in a position where by suing the vessel owner to recoup its compensation payments it exposed itself to possible claim for indemnification of a larger judgment against the vessel owner." *Ibid.* Under these circumstances, an employer was extremely unlikely to press the claim of its employee.

In 1972, the *Ryan* doctrine was legislatively overruled; an employer is no longer liable to a vessel owner for any damages recovered by an employee in a third party action. 33 U.S.C. § 905(b). The present question is thus the current state of the

---

**8.** For a thorough recounting of the genesis and evolution of the conflict of interest exception, see *Bandy v. Bank Line Ltd., supra,* note 3.

conflict of interest exception after the 1972 amendment to the Act.

 This issue has been well and extensively analyzed by Judge Clarke in *Bandy v. Bank Line Ltd., supra*, and I am in basic accord with his conclusion. Although the grounds of decision of many of the post-*Czaplicki* cases has been severely undercut by the 1972 amendments, which eliminated a specific potential conflict, these changes do not affect the broader principle which underlies both *Czaplicki* and its progeny: the fact of a statutory assignment should not prevent the employee from pursuing his claim when a conflict of interest disables the employer from doing so. Nor is there any reason to limit application of the *Czaplicki* principle to the particular facts of that case.[9] Consequently, if plaintiff's employer-assignee suffered under the burdens of a conflict of interest as the holder of plaintiff's claim, defendants' motion to dismiss under § 933(b) must be denied.

 To date, the parties have not addressed themselves to the conflict of interest issue. It is thus not possible to resolve this question on the present record. The parties will therefore be granted an opportunity, if they so wish it, to undertake discovery on this issue, to be completed within 60 days of the date of this opinion. Plaintiff will bear the burden of persuasion on the conflict issue when defendant's motion to dismiss is ultimately decided. *Bandy v. Bank Line Ltd., supra*, 442 F.Supp. at 886–87.[10]

*Summary Judgment*

Although neither side has submitted a statement of material facts which are allegedly disputed or allegedly not in dispute, as required by Rule 9(g) of the General Rules of this court, the circumstances surrounding plaintiff's accident are relatively clear from his deposition testimony. According to plaintiff, on the day in question, he was working as a longshoreman in the lower hold of No. 2 Hatch. Access to the hold was by way of a vertical ladder attached to the bulkhead separating Hatch No. 2 from Hatch No. 3. As I understand it, the ladder leads from the floor of the hold to a small hole in the main deck in an area enclosed by a small structure called the masthouse. Also in the masthouse, and apparently within a foot or two of the hole for the ladder from Hatch No. 2, is the hole for the ladder for Hatch No. 3. At the end of the work day, plaintiff and his co-workers climbed up the ladder. As plaintiff emerged from the hole into the masthouse, he grabbed onto a bar attached to a wall and put his foot on the deck. He placed his left foot, however, in the hole for the No. 3 Hatch ladder; the resulting jerk injured him. It is plaintiff's contention that defendants were negligent with regard to his safety in that the lighting in the masthouse was dangerously inadequate and that the arrangement of the manholes in the masthouse was hazardous.

At this particular moment, the law in this circuit regarding the respective responsibilities of the vessel owner/charterer and the stevedoring company for the safety of the longshoreman is unsettled. *Compare Cox v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 798 (2d Cir. 1978) *with Canizzo v. Farrell Lines, Inc.*, 579 F.2d 682 (2d Cir. 1978) *and Lopez v. A/S D/S Svendborg and D/S of 1912 A/S*, 581 F.2d 319 (2d Cir. 1978). But whatever the appropriate legal standard may be, summary judgment cannot be granted in this case because there are material issues of fact which are presently unresolved.

 With regard to plaintiff's contention concerning the lighting in the mast-

---

9. It may be, for example, that plaintiff's employer has been dissuaded from pressing the claim in favor of its employee out of fear of antagonizing its customer, the vessel charterer. *See Valentino v. Rickners Rhederei, G.M.B.H., S.S. Etha*, 552 F.2d 466, 469 (2d Cir. 1977).

10. The burden is properly placed on plaintiff because the issue is the applicability of an exception to a general rule that would operate, absent the exception, to bar plaintiff's suit, and there appears to be no reason to *presume*, after the demise of the *Ryan* doctrine, that the exception should be applied.

house, defendants argue, first, that "this court might safely conclude" there was sufficient natural lighting in the masthouse at the time of the accident. I cannot accept this invitation, for the record at present is skimpy, and the state of the lighting at any one place and time and its "sufficiency" in terms of personal safety are quintessentially issues of fact. Second, relying on *Cox v. Flota Mercante Grancolombiana, S.A., supra*, defendants argue that the responsibility for assuring the longshoremen adequate lighting in the masthouse was upon the stevedore and not them. But resolution of this contention, too, requires a factual inquiry. Even under the *Cox* standard, the division of responsibility between stevedore and owner depends on the facts of each case, and the present record in this one reveals too little to permit me to absolve the vessel owner and charterer of any responsibility to the longshoremen for the lighting in the masthouse.[11]

For similar reasons, summary judgment cannot be granted for defendants on plaintiff's argument regarding the arrangement of the manholes in the masthouse. Defendants' contention here is that there could be no finding of negligence since, as plaintiff stated at his deposition, the layout in the masthouse was not unusual. But it is a commonplace that adherence to the usual practice of an industry, by itself, is not a complete defense to a charge of negligence. *See, e. g., City of New York v. McAllister Brothers, Inc.*, 299 F.2d 227, 228 (2d Cir. 1962); *Kane v. Branch Motor Express Co.*, 290 F.2d 503, 507 (2d Cir. 1961); *Gulisano v. American Export Lines, Inc.*, 212 F.Supp. 809, 811 (S.D.N.Y. 1962) (Cashin, J.). Whether a given practice is negligent is to be determined by a jury, not by the industry which practices it.

*Conclusion*

The motion for summary judgment is denied. The motion to dismiss based on an earlier order of dismissal by Judge Bonsal is also denied. Decision on the motion to dismiss based on 33 U.S.C. § 933(b) is reserved, pending discovery, to be completed within 60 days of this opinion.

IT IS SO ORDERED.

---

11. In any case, as indicated above, it is presently unclear whether the *Cox* decision is still the law of this circuit.